**Docket No. 2024-1611**

*In the*

# United States Court of Appeals

*For the*

# Federal Circuit

IN RE: BLUE BUFFALO ENTERPRISES, INC.,

*Appellant.*

*On Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 17/136,152.*

# CORRECTED BRIEF OF APPELLANT

EVERETT G. DIEDERIKS, JR.
NICHOLAS WHITELAW

DIEDERIKS & WHITELAW, PLC
4196 Merchant Plaza, #815
Woodbridge VA 22192

703-583-8300 (Telephone)
ediederiks@dwpatentlaw.com
nwhitelaw@dwpatentlaw.com

*Attorneys for Appellant, Blue Buffalo Enterprises, Inc.*

COUNSEL PRESS · (213) 680-2300 PRINTED ON RECYCLED PAPER

# EXEMPLARY REJECTED PATENT CLAIM
## CLAIM 1

1. A packaged food product comprising:

a container including at least one sidewall and a bottom wall which combine to define a storage area, said bottom wall having an integrally formed, tool portion; and

a food product retained within the storage area and in contact with the at least one sidewall, wherein the at least one sidewall is configured to be readily deformable by a hand of a user to reduce a volume of the storage area, and the packaged food product is configured such that reducing the volume of the storage area causes the food product to exit the storage area for further processing with the tool portion, wherein the tool portion includes a plurality of spaced projections configured for use in breaking up and/or tenderizing the food product after the food product is removed from the storage area.

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2024-1611

**Short Case Caption** In re: Blue Buffalo Enterprises Inc.

**Filing Party/Entity** Appellant, Blue Buffalo Enterprises Inc.

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: July 17, 2024

Signature: /s/ Nicholas Whitelaw

Name: Nicholas Whitelaw

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Blue Buffalo Enterprises, Inc. | | General Mills, Inc. (parent company of Blue Buffalo Enterprises, Inc.) |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Diederiks & Whitelaw, PLC | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☑ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES ........ ii

STATEMENT OF RELATED CASES ........ 1

STATEMENT OF JURISDICTION ........ 2

STATEMENT OF THE ISSUES ........ 3

STATEMENT OF THE CASE ........ 3

STATEMENT OF THE FACTS ........ 5

A. Overview, Background and Claims of the Invention ........ 5

B. Prosecution before the United States Patent and Trademark Office and the Rejection Being Appealed ........ 8

SUMMARY OF ARGUMENTS ........ 11

ARGUMENTS ........ 12

A. Standard Of Review ........ 12

B. The Board relies on “capable of” in contradiction to legal authority established by the CAFC which sets forth a clear distinction in scope between “configured to” and “capable of” claim language as explained in A*spex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335 (Fed. Cir. 2012) ........ 13

C. The Board did not rely on the proper standard for interpreting “configured to” type language when applying the new ground of rejection ........ 17

D. The Patent Office's Reliance on *In re Schreiber* Is Misplaced ........ 20

CONCLUSION ........ 21

ADDENDUM ........ 22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*,
672 F.3d 1335 (Fed. Cir. 2012) ....................3, 11, 13, 14, 16

*Dickinson v. Zurko,*
527 U.S. 150 (1999) ....................12

*In Re Gartside,*
203 F.3d 1305 (Fed. Cir. 2000) ....................12

*In re Giannelli*,
739 F.3d 1375 (Fed. Cir. 2014) ....................16

*In Re Hyatt,*
211 F.3d 1367 (Fed. Cir. 2000) ....................12

*In Re Kotzab,*
217 F.3d 1365 (Fed. Cir. 2000) ....................12

*In Re Oelrich,*
666 F.2d 578 (C.C.P.A. 1981) ....................3, 12, 20, 21

*In Re Robertson,*
169 F.3d 743 (Fed. Cir. 1999) ....................3, 12, 20

*In re Schreiber,*
128 F.3d 1473 (Fed. Cir.) ....................20

*In Re Venezia*,
530 F.2d 956 (CCPA 1976) ....................14

*Mazzari v. Rogan,*
323 F.3d 1000 (Fed. Cir. 2003) ....................12

**Statutes & Other Authorities:**

5 U.S.C. § 500 ....................12

28 U.S.C. § 1295(a)(4)(A) ....................2

35 U.S.C. § 6 ....................2

35 U.S.C. § 103 .......... 9
35 U.S.C. § 134 .......... 2
35 U.S.C. § 141(a) .......... 2

**Rules:**

Fed. Cir. R 47.5 .......... 1

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, Appellant states that no other appeal in or from the same proceeding was previously before this or any other appellate court whether under the same or a similar title, and there are no related cases pending before this Court or any other court.

## STATEMENT OF JURISDICTION

The statutory basis for jurisdiction of the U.S. Patent and Trademark Office Patent Trial Appeal Board is 35 U.S.C. §§ 6 and 134.

The statutory basis for jurisdiction of this Court is 35 U.S.C. § 141(a) and 28 U.S.C. § 1295(a)(4)(A). Appellant filed a timely Notice of Appeal on March 22, 2024, Appx520-545, for review of the Decision of the Patent Trial and Appeal Board, hereinafter “the Board”, in Appeal No. 2023-003723 dated November 1, 2023, Appx1-13, and supported on January 23, 2024, with a Decision responsive to a request for rehearing, Appx14-21, in patent application serial number 17/136,152, which was a final and appealable Decision on Appeal.

## STATEMENT OF THE ISSUES

1. Did the Board misinterpret "configured to" language as functional language met by something "capable of" performing the function when "configured to" in claims requires a structure that is more than just capable of performing a function but is actually made to perform the function as explained in *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335 (Fed. Cir. 2012)?

2. Was it sufficient for the Examiner or the Board to say, without explaining how or why, that there is "reasonable basis to conclude" that Coleman's irregularities are "inherently" "capable of breaking up and/or tenderizing" under this Court's standards in *In Re Robertson* 169 F.3d 743 (Fed. Cir. 1999) and *In Re Oelrich,* 666 F.2d 578 (C.C.P.A. 1981)?

## STATEMENT OF THE CASE

Appellant filed U.S. Patent Application Serial No. 17/136,152 on December 29, 2020, (hereinafter the "'152 application") entitled Packaged Food Product and Method of Producing the Packaged Food Product, Appx27-39. A PCT application, PCT/US2021/055579, was filed October 19, 2021, claiming priority to the '152 application and, in the Written Opinion of the International Searching Authority of the PCT application, Appx121-124, all of the claims in the PCT application were indicated as having novelty and inventive step.

A Patent Prosecution Highway Petition was filed in the ‘152 application on March 3, 2022, to designate the application “Special”, Appx115-117, and granted on April 29, 2022, Appx127-129, based on the favorable Written Opinion.

The Examiner issued a Restriction Requirement on May 5, 2022, Appx130-136, restricting examination to either claims 1-12 drawn to a package food or claims 13-21 drawn to a method of serving a food product. The product claims were elected, Appx140, and the method claims were withdrawn from consideration, Appx146.

In a First Non-Final Action dated July 18, 2022, Appx144-160, all claims were rejected. Appellant filed a response to the Non-Final Action on October 18, 2022, Appx360-371. The Examiner issued a Final Action maintaining the rejections, Appx375-394.

Appellant filed a Notice of Appeal to the Board on February 22, 2023, Appx443, and an Appeal Brief, on April 19, 2023, Appx444-457. The Examiner filed an Answer, on June 27, 2023, Appx460-476, and the Appellant filed a Reply Brief, on August 9, 2023, Appx479-484. The Patent Trial and Appeal Board issued a decision affirming the Examiner, on November 1, 2023, Appx1-13, containing a new ground of rejection. The Appellant requested a rehearing, on December 19, 2023, Appx504-509, which was denied in a Final Decision, on January 1, 2024, Appx14-21.

Appellant timely filed a Notice of Appeal to the Court of Appeals for the Federal Circuit on March 22, 2024, Appx520-545.

## STATEMENT OF THE FACTS

### A. Overview, Background and Claims of the Invention

The invention of the application, Appx27-39, solved several deficiencies in the prior art. Food products are often packaged prior to sale. Such packaging can take the form of cans, jars, boxes or bags, for example. In the case of pet food, such as wet cat or dog food, cans are a common packaging type. When the wet food is served, consumers frequently remove the food from the can and place it into or onto a bowl, dish or plate, for example, where the food may then be broken up or otherwise prepared for serving. This requires a spoon or fork, both for the serving and the chopping. However, many consumers would prefer not to use a utensil for this task that they themselves also eat with, necessitating the ownership of one or more dedicated pet food utensils. At the very least, this process results in additional dirty utensils that must be cleaned. Accordingly, it is desirable to provide a way for consumers to serve wet pet food without using a utensil. In addition, one reason why a consumer might use a utensil to serve wet pet food from a can is that the can often contains multiple servings, and the consumer only wishes to serve part of the can's contents. Accordingly, it is also desirable to

provide wet pet food in single-serve packaging. To that end, claim 1 of the Application, Appx361, reads as follows (underlined language added during prosecution):

1. A packaged food product comprising:

a container including at least one sidewall and a bottom wall which combine to define a storage area, said bottom wall having an integrally formed, tool portion; and

a food product retained within the storage area and in contact with the at least one sidewall, wherein the at least one sidewall is configured to be readily deformable by a hand of a user to reduce a volume of the storage area, and the packaged food product is configured such that reducing the volume of the storage area causes the food product to exit the storage area for further processing with the tool portion, wherein the tool portion includes a plurality of spaced projections configured for use in breaking up and/or tenderizing the food product after the food product is removed from the storage area.

Figures 2 and 4, Appx364-365, illustrate these claimed features well:




FIG. 2




FIG. 4

Claim 1 is a product claim directed to a packaged food product 100 as seen in Figure 2 above. The packaged food product 100 comprises a container 205

including the at least one sidewall 210 and a bottom wall 300, which combine to define a storage area, as discussed in paragraphs 16 and 17 of the specification, Appx30, and shown in Figure 4. A food product 200 is retained within the storage area. The bottom wall 300 has an integrally formed, tool portion 330, as discussed in paragraph 20, Appx31-32. The at least one sidewall 210 is configured to be readily deformable by a hand of a user to reduce a volume of the storage area, as discussed in paragraph 18, Appx31. Based on this structure, the packaged food product 100 is configured such that the sidewall 210 can be squeezed, thereby reducing the volume of the storage area and causing the food product 200 to exit the storage area for further processing with the tool portion 330, as discussed in paragraph 18. For this purpose, the tool portion 330 includes a plurality of spaced projections 375 configured for use in breaking up and/or tenderizing the food product 200 after the food product 200 is removed from the storage area.

### B. Prosecution before the United States Patent and Trademark Office and the Rejection Being Appealed

In a First Non-Final Office Action dated July 18, 2022, Appx144-160, two completely separate but redundant claim rejections were set forth, with the first set being eventually dropped as duplicative and therefore is not discussed further herein. In a second set of rejections, claims 1-7 and 12 were rejected under

35 U.S.C. 103 as being unpatentable over Coleman (US 20040089583), Appx694-699 in view of Loden (US 7959346), Appx683-693, Willemsen (US 20140263375), Appx700-709 and Shin (KR 20100110619), Appx665-682, with the remaining claims being rejected based on additional references, Appx153-158. The Examiner relied on Coleman to teach a packaged food container with a sidewall. The Examiner admitted that Coleman was not explicit about a tool portion and also admitted that Coleman does not show the sidewall configured to be readily deformable. The Examiner turned to Figure 14 of Loden to show similar shaped projections and Willemsen and Shin were used to teach providing a deformable sidewall. For rejecting the limitations of claim 2, only Colman was relied upon, Appx154.

In response to the Examiner's First Non-Final Action, Appellant filed an Amendment/Response, Appx360-371, amending independent claim 1 to add the language underlined above as found in original claim 2. The added language was presented to clearly distinguish over the cited references by specifying <u>the tool portion includes a plurality of spaced projections configured for use in breaking up and/or tenderizing the food product after the food product is removed from the storage area</u>.

The Examiner then issued a Final Action on November 25, 2022, Appx375-394, adopting the rejection of claim 2 for the newly amended claim 1 and, in a

later issued Advisory Action, the Examiner withdrew the first set of rejections based on Taylor as a primary reference, Appx434-442.

On appeal, the Board recognized that the Examiner's rejection was deficient, but issued a new ground of rejection applying the same references, Appx1-13. The Board argued, Appx7, in part:

> With regard to claim l's recitation that the tool portion includes "projections configured for use in breaking up and/or tenderizing the food product, " Coleman teaches the base of its bowl is formed of irregularities (21) in the form of pyramids or relatively sharp concentric circles. Final Act. 8 (citing Coleman ¶ 16). This is similar to the shape of the projections described in Appellant's Specification for use in breaking up and/or tenderizing its food product. Ans. 5 (citing Spec. ¶ 20 (describing the projections of the tool portion as "pyramidal in shape so as to generally come to a sharp or rounded point ")). The irregularities on the bottom of Coleman's container are designed to engage with the surface the bowl rests on to resist sliding and overturning when the food or drink in the container is being consumed. Coleman ¶ 16. To do so, the irregularities would have some relative degree of rigidity. Thus, in addition to preventing sliding and overturning of the container, there is a reasonable basis to conclude that Coleman's irregularities would also have been capable of being used for breaking up and/or tenderizing a food product.

The Board did not appear to rely on Loden in its analysis. The Board denied the Applicant's request for a rehearing in the Decision on the Rehearing, Appx15-16.

## SUMMARY OF ARGUMENTS

In their decision, the Board disregarded and erroneously applied a legal distinction already ruled upon by the CAFC in clarifying how "configured to" has a different, more limiting scope, than "capable of" language. "Configured to" in claims requires a structure which is more than just **capable of** performing a function, but rather is limited to structure specifically designed to perform the recited function. More specifically, the Board improperly upheld the Examiner's reliance on "capable of" in contradiction to legal authority established by the CAFC in setting forth a clear distinction in scope between "configured to" and "capable of" claim language as explained in *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335 (Fed. Cir. 2012). In addition, the Board set forth a new ground of rejection when the Board relied on new facts and reasoning, not present in the Final Rejection, and the Board did not rely on the proper standard for interpreting "configured to" type language when applying the new ground of rejection. Once again, even though the appropriate caselaw was directed to their attention, the Board disregarded the law and erroneously held that "capable of" is an equivalent to "configured to" instead of acknowledging the Court specified distinction, i.e., "configured to" requires structure which is more than just capable of performing a function but rather is actually specifically designed to perform the

function. As the Court has already ruled that “configure to” is more specific than “capable of” and both the rejection and the Board decision relies on “capable of”, the decision is based on a rejection which does not encompass the full scope of the claims.

## ARGUMENTS

### A. Standard Of Review

The factual findings of the Board are reviewable under the Administrative Procedures Act for "substantial evidence" and determinations of obviousness, *de novo*. *In Re Kotzab,* 217 F.3d 1365, 1369 (Fed.Cir.2000), *In Re Hyatt,* 211 F.3d 1367, 1372 (Fed. Cir. 2000), 5 U.S.C. § 500, *et seq., Dickinson v. Zurko,* 527 U.S. 150, 165 (1999). The Board’s factual interpretation of the prior art must be supported by substantial evidence. *In Re Gartside,* 203 F.3d 1305 at 1316 (Fed. Cir. 2000). The Board cannot factually conclude that a use is inherent in the prior art unless it can show that the alleged possible use is *inevitable. In Re Robertson* 169 F.3d 743 (Fed. Cir. 1999) and *In Re Oelrich,* 666 F.2d 578 (C.C.P.A. 1981). Review of the Patent Office's interpretation of this Court's precedents and federal statutory provisions is *de novo. Mazzari v. Rogan,* 323 F.3d 1000, 1005 (Fed. Cir. 2003).

### B. The Board relies on "capable of" in contradiction to legal authority established by the CAFC which sets forth a clear distinction in scope between "configured to" and "capable of" claim language as explained in *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335 (Fed. Cir. 2012).

"Configured to" type language must be given weight and "configured to" limitations in claims requires a structure which is more than just "capable of" performing a function but rather is actually, specifically designed to perform the function. The Board held the limitation of the sidewall being configured to be readily deformable was met by the prior art because "Coleman teaches that the sides and base of its food bowl are 'relatively thin' and 'relatively flexible'…. Based on this flexibility, there is reasonable basis to conclude that Colman's sidewalls are capable of being 'readily deformable by a hand of a user to reduce a volume of the storage area' of its food bowl." Appx6. Also, the Board stated, "Coleman teaches that the base of its bowl is formed of irregularities (21) in the form of pyramids or relatively sharp concentric circles". The Board specifically holds "The irregularities on the bottom of Colman's container are designed to engage with the surface the bowl rests on to resist sliding and overturning" and "To do so, the irregularities would have some relative degree of rigidity. Thus, in addition to preventing sliding and overturning of the container, there is a reasonable basis to conclude that Coleman's irregularities would also have been

capable of being used for breaking up and/or tenderizing a food product." In each of these instances, it is respectfully submitted that the wrong standard was employed. Appx7.

Even back as far as 1996, the federal courts have recognized that functional language can impart structure rather than merely directing activities to take place in the future and the structure of components may be defined in terms of interrelationship of components, or attributes they must possess. The recited function actually need never occur, but that does not change the fact that structural interrelationships between components are needed to enable the function to be performed and these interrelationships provide particular limitations in the claim which must be specifically met by the prior art. See *In re Venezia* 530 F.2d 956, 958 (CCPA 1976).

Of specific relevance is the more recent case of *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1349 (Fed. Cir. 2012). This case focused on claim language that included adapted to, with the claim reading as follows: "said arms and said pair of magnetic members <u>adapted to</u> extend across respective side portions of a primary spectacle frame" (emphasis added). The patent disclosed auxiliary sunglass frames that magnetically attached to a primary spectacle frame. The auxiliary sunglass frames of the patent attached to

the *top* of the primary frame, while the auxiliary frames of the accused products attached to the *bottom* of the primary frame. The question was whether the claim language was broad enough to capture a device capable of attaching in a top-mounted configuration, or only devices specifically designed to attach in a top-mounted configuration. The Court explained, "In common parlance, the phrase "adapted to" is frequently used to mean "made to," "designed to," or "configured to," but it can also be used in a broader sense to mean "capable of" or "suitable for." See Webster's Third New International Dictionary 24 (1968) ("suited by nature, character, or design to a particular use, purpose, or situation"); 1 Oxford English Dictionary 139 (2d ed. 1989) ("fitted; fit, suitable... modified to fit new situations"). Id. at 1349. The Court also stated in this case, "we conclude that the narrower meaning is correct." Id. at 1349. Therefore, claim language that employs "configured to" type language should be interpreted to cover devices that are specifically designed to perform the stated function. In this case the claim should be interpreted as covering a device with a tool portion that includes a plurality of spaced projections being designed or constructed to be used in breaking up and/or tenderizing the food product after the food product is removed from the storage area, as opposed to the incorrect interpretation of the Board, wherein the claim covers any device merely capable of breaking up food.

The *Aspex* case was followed in the case of *In re Giannelli*, 739 F. 3d 1375, 1379 (Fed Cir. 2014) wherein this Court was analyzing a row exercise machine comprising an input assembly including a first handle portion adapted to be moved from a first position to a second position by a pulling force exerted by a user on the first handle portion in a rowing motion. The court stated:

> We have noted that, "the phrase `adapted to' is frequently used to mean `made to,' `designed to,' or `configured to,' ..." *Aspex Eyewear, Inc. v. Marchon Eyewear*, *Inc.*, 672 F.3d 1335, 1349 (Fed.Cir.2012). Although the phrase can also mean "`capable of' or `suitable for,'" *id.,* here the written description makes clear that "adapted to," as used in the '261 application, has a narrower meaning, *viz.,* that the claimed machine is designed or constructed to be used as a rowing machine whereby a pulling force is exerted on the handles.

Regardless of the knowledge of these decisions, the Board blatantly ignored the legal distinction clearly set forth by this Court in these cases. In doing so, the Board errored in interpreting the claimed language and applying the prior art. "a plurality of spaced projections configured for use in breaking up and/or tenderizing the food product after the food product is removed from the storage area" as just being "capable of" versus being designed or constructed to be used in breaking up and/or tenderizing the food product after the food product is removed from the storage area.

### C. The Board did not rely on the proper standard for interpreting "configured to" type language when applying the new ground of rejection.

When properly interpreted, the subject claims clearly distinguish over the prior art on this basis. Claim 1, Appx361, recites, in part: "the packaged food product is configured such that reducing the volume of the storage area causes the food product to exit the storage area for further processing with the tool portion, wherein the tool portion includes a plurality of spaced projections configured for use in breaking up and/or tenderizing the food after the food product is removed from the storage area."

Knowing these limitations must be interpreted consistent with the specification and the "configured to" language requires structure that is more than just "capable of" performing the function but must actually be specifically designed to perform the function, it is respectfully submitted that the rejection is improper. Without a doubt, **there is absolutely no disclosure in Coleman that the packaged food container is designed for dispensing the food prior to consumption or the irregularities 21 of Coleman are specifically structured for or ever used to perform the function of breaking up and/or tenderizing the food product after the food product is removed**. <u>**To the contrary, paragraphs 13-21 of Coleman specifically teach that the food or drink should stay in the**</u>

**bowl until consumed and irregularities 21 are designed to engage with the ground and resist sliding and overturning**. Appx697-698. Therefore, the claim limitations have not been disclosed by the prior art.

Again, the Board bases its decision, at least in part, on:

> "The irregularities on the bottom of Coleman's container are designed to engage with the surface the bowl rests on to resist sliding and overturning when the food or drink in the container is being consumed. Coleman ¶ 16. To do so, the irregularities would have some relative degree of rigidity. Thus, in addition to preventing sliding and overturning of the container, there is a reasonable basis to conclude that Coleman's irregularities would also have been capable of being used for breaking up and/or tenderizing a food product." Appx7

As disclosed in paragraphs 19-22 of the Coleman patent, the projections of the container are designed to resist sliding and overturning when the food or drink in the container is being consumed. Appx698. Contrary to the unsupported conclusion of the Board, container projections designed to resist sliding and overturning of a container does not translate into the projections being relatively rigid. Still, based just on this undisclosed rigidity of the projections, the Board then held there is a reasonable basis to conclude Coleman's irregularities would have also been capable of being used for breaking up and/or tenderizing a food product, Appx7. The Appellant agrees the irregularities of Coleman are designed to resist sliding an overturning when the food or drink in the container is being consumed. However, it is submitted that soft and flexible, e.g., rubber, projections

would actually better function to resist sliding, particularly considering the Coleman container is used hold pet food which is normally supported upon a rather slick kitchen floor (consider a rug runner). In any case, the holding on the degree of rigidity is, at best, highly speculative. Regardless, there is no substantial evidence that the prior art structure of Coleman which is designed to stop sliding of a container would be even capable of breaking up or tenderizing food, and there is certainly no disclosure that this slide prevention structure is specifically designed for use in breaking up and/or tenderizing the food product after the food product is removed from the storage area, as claimed.

Once again, the Appellant respectfully submits that the wrong standard has been relied upon and the prior art misapplied. For the reasons set forth above, the claim language is narrower than considered in the rejection and the claim requires structure that is more than just capable of performing a specified function. In addition, Coleman lacks any disclosure as to the rigidity of the irregularities, and certainly has absolutely no disclosure concerning using the irregularities in breaking up and/or tenderizing a food product removed from the bowl. To the contrary, as clearly stated in paragraph 0014 of Coleman, Appx697, in referring to the eating of the food directly from the container, the "food container is designed primarily for feeding pets in a hurry…and the container can be placed on the floor or ground…". Therefore, as the food of the Coleman container is never intended

to be removed from the container other than by a pet eating from the container, there is no apparent reason to design the container to provide for squeezing out the food or breaking up/tenderizing the food upon removal. With all this in mind, it is respectfully submitted that the decisions below should be reversed.

### D. The Patent Office's Reliance on *In Re Schreiber* Is Misplaced

*In re Schreiber,* 128 F.3d 1473 (Fed. Cir.) is not analogous. Unlike the subject case, the prior art reference cited by the Board in that decision could be used for the same purpose as the claimed purpose and there was no dispute that the structural limitations in the claim were also present in the prior art cited by the Board. In the subject case, there is no structure designed according to the claimed tool portion or structure that would arguably be used as a corresponding tool portion, let alone a plurality of spaced projections configured for use in breaking up and/or tenderizing the food after the food product is removed from the storage area. Furthermore, the Board errored in concluding that Coleman's irregularities, like the claimed projections, are specifically designed for or even "inherently capable of breaking up and/or tenderizing the food product after the food product is removed from the storage area", Appx19, clearly failing to show, or even address, that the alleged possible use is *inevitable,* as required by *In Re Robertson* 169 F.3d 743 (Fed. Cir. 1999) and *In Re Oelrich,* 666 F.2d 578 (C.C.P.A. 1981). Putting aside the highly speculative holding on the degree of rigidity, there is no

foreseen dispute that the Coleman container is designed to house the food to be eaten directly therefrom. With this in mind, it cannot be reasonably argued that the Coleman container is designed to have the sidewall readily deformable by a hand of a user to reduce a volume of the storage area in order to remove the food or the irregularities configured to break up or tenderize a removed food product. Again, the Board cannot factually conclude that a use is inherent in the prior art unless it can show that the alleged possible use is *inevitable. In Re Robertson* 169 F.3d 743 (Fed. Cir. 1999) and *In Re Oelrich,* 666 F.2d 578 (C.C.P.A. 1981).

## CONCLUSION

For the reasons stated, it is respectfully submitted that the Board's Decision is erroneous and should be reversed.

Dated: July 17, 2024

Respectfully submitted,

*/s/* Everett G. Diederiks, Jr.
Everett G. Diederiks, Jr.

*/s/* Nicholas Whitelaw
Nicholas Whitelaw

**Diederiks & Whitelaw,Plc**
**4196 Merchant Plaza, #815**
**Woodbridge, VA 22192**
**Tel: 703-583-8300**
ediederiks@dwpatentlaw.com
nwhitelaw@depatentlaw.com

*Counsels for Appellant, Blue Buffalo Enterprises Inc.*

# ADDENDUM

## TABLE OF CONTENTS

**Add. Page**

Patent Board Decision on Appeal dated November 1, 2022 Appx1-13 ………..…1

Patent Board Decision on Rehearing dated January 23, 2024 Appx14-21 ……....14

Specification as amended pursuant to Fed. Cir. R. 28(c)(1)(B) Appx27-32 …….22

Figures as amended pursuant to Fed. Cir. R. 28(c)(1)(B) Appx364-366 ………27

Claims as amended pursuant to Fed. Cir. R. 28(c)(1)(B) Appx361-363 ………...30

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 17/136,152 | 12/29/2020 | Daniel Christopher Budd | 8913US02 | 4609 |

106306 7590 11/01/2023
DIEDERIKS & WHITELAW, PLC
4196 Merchant Plaza, #815
Woodbridge, VA 22192

| EXAMINER |
|---|
| THAKUR, VIREN A |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1792 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 11/01/2023 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

gmi.mail@dwpatentlaw.com
mail@dwpatentlaw.com

PTOL-90A (Rev. 04/07)

UNITED STATES PATENT AND TRADEMARK OFFICE

————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

————————

*Ex parte* DANIEL CHRISTOPHER BUDD, JACQUELINE IVERSEN, and TROND ERIK TOLLEFSEN

————————

Appeal 2023-003723
Application 17/136,152
Technology Center 1700

————————

Before KAREN M. HASTINGS, JEFFREY B. ROBERTSON, and JENNIFER R. GUPTA, *Administrative Patent Judges*.

GUPTA, *Administrative Patent Judge*.

DECISION ON APPEAL[1]

Pursuant to 35 U.S.C. § 134(a), Appellant[2] appeals from the Examiner's decision to reject claims 1 and 3–12. *See* Final Act. 1. We have jurisdiction under 35 U.S.C. § 6(b).

We AFFIRM and designate our affirmance as including new grounds of rejection.

---

[1] In this Decision, we refer to the Specification filed Dec. 29, 2020 ("Spec."); the Final Office Action entered Nov. 25, 2022 ("Final Act."); the Appeal Brief filed April 19, 2023 ("Appeal Br."); the Examiner's Answer entered June 27, 2023 ("Ans."); and the Reply Brief filed Aug. 9, 2023 ("Reply Br.").

[2] "Appellant" refers to "applicant" as defined in 37 C.F.R. § 1.42. Appellant identifies the real party in interest as Blue Buffalo Enterprises, Inc. Appeal Br. 3.

## CLAIMED SUBJECT MATTER

The claims are directed to a packaged food product. Claim 1, reproduced below, illustrates the claimed subject matter:

> 1. A packaged food product comprising:
>
> a container including at least one sidewall and a bottom wall which combine to define a storage area, said bottom wall having an integrally formed, tool portion; and
>
> a food product retained within the storage area and in contact with the at least one sidewall, wherein the at least one sidewall is configured to be readily deformable by a hand of a user to reduce a volume of the storage area, and the packaged food product is configured such that reducing the volume of the storage area causes the food product to exit the storage area for further processing with the tool portion, wherein the tool portion includes a plurality of spaced projections configured for use in breaking up and/or tenderizing the food product after the food product is removed from the storage area.

Appeal Br. 13 (Claims App.).

## REFERENCES

The Examiner relies on the following references to reject the claims:

| Name | Reference | Date |
|---|---|---|
| Loden | US 7,959,346 B2 | June 14, 2011 |
| Coleman | US 2004/0089583 A1 | May 13, 2004 |
| Willemsen | US 2014/0263375 A1 | Sept. 18, 2014 |
| Taylor | US 2020/0239196 A1 | July 30, 2020 |
| Shin[3] | KR 2010-0110619 A | Oct. 13, 2010 |
| Inomata[4] | JP 2011-073768 A | April 14, 2011 |

[3] The Examiner cites to a machine-generated translation of record, the accuracy of which Appellant does not dispute.
[4] The Examiner cites to a machine-generated translation of record, the accuracy of which Appellant does not dispute.

| | | |
|---|---|---|
| Pankowski[5] | AT-521180 B1 | Nov. 15, 2019 |

REJECTIONS

The Examiner maintains the following rejections on appeal[6]:

| Claim(s) Rejected | 35 U.S.C. § | Reference(s)/Basis |
|---|---|---|
| 1, 3–7, 12 | 103 | Coleman, Loden, Willemsen, Shin |
| 8–10 | 103 | Coleman, Loden, Willemsen, Shin, Inomata, Pankowski |
| 11 | 103 | Coleman, Loden, Willemsen, Shin, Taylor |

OPINION

*Obviousness Rejection of Claims 1, 3–7, and 12*

Appellant argues claims 1, 3, 4, 7 and 12 as a group. Appeal Br. 5–9. We select claim 1 as representative. Claims 3, 4, 7, and 12 will stand or fall with claim 1. 37 C.F.R. § 41.37 (c)(1)(iv) (2021).

Appellant separately argues for the patentability of claims 5 and 6. Appeal Br. 9. We address Appellant's arguments regarding those claims below.

*Claims 1, 3, 4, 7, and 12*

The Examiner finds that Coleman's Figures 2 and 3 teach a portable pet food package that includes a sidewall and bottom wall that combine to define a storage area, where the bottom wall has integrally formed

[5] The Examiner cites to a machine-generated translation of record, the accuracy of which Appellant does not dispute.

[6] The rejections of claims 1, 3–7, and 12 under 35 U.S.C. § 103 based on the combination of Taylor, Coleman, and Loden, alone or in combination with other references were withdrawn by the Examiner in the Examiner's Answer. Ans. 3.

irregularities (21) (corresponding to claim 1's "tool portion") that are capable of being used for breaking up food after the food is removed from the storage area. Final Act. 8–9 (Coleman ¶¶ 17, 19, Figs. 2, 3). The Examiner, however, finds that Coleman fails to teach "the at least one sidewall is configured to be readily deformably by a hand of a user to reduce a volume of the storage area, and the packaged food product is configured such that reducing the volume of the storage area causes the food product to exit the storage area for further processing with the tool portion." *Id.* The Examiner, therefore, relies on Willemsen and Shin as teaching or suggesting those claim recitations, and providing a reason for modifying Coleman. *Id.* at 9–10.

The Examiner finds that Willemsen teaches a collapsible sidewall where collapsing the sidewall can be advantageous to access/empty the contents of the container in a metered manner. Final Act. 9 (citing Willemsen ¶ 1, Figs. 5, 6). In addition, the Examiner finds that Shin teaches providing a container with a deformable sidewall to reduce the waste disposal volume. *Id.* (citing Shin 2, ll. 55–59). The Examiner finds that because Coleman teaches that its container can be made from flexible materials (Coleman ¶ 17), suggesting deformable sidewalls, it would have been obvious to modify Coleman's container, based on Willemsen and Shin, to include a deformable sidewall "to more easily meter out the food in Coleman's container, as well as for reducing the waste volume due to the sidewall being compressible." *Id.* at 9–10.

Appellant argues that a person of ordinary skill in the art would not have modified Coleman to include deformable sidewalls, based on Willemsen and Shin as proposed by the Examiner, because doing so would

destroy the purpose of Coleman's container. Appeal Br. 7–8. Appellant also argues that there is no evidence that Coleman's irregularities are capable of breaking up and/or tenderizing the food product after the food product is removed from the container. *Id.* at 8.

It is well established that claims directed to an apparatus must be distinguished from the prior art in terms of structure rather than function. *See In re Schreiber*, 128 F.3d 1473, 1477–78 (Fed. Cir. 1997). It is also well established that when there is a reason to conclude that the structure of the prior art is capable of performing the claimed function (i.e., being "readily deformable"), the burden shifts to the applicant to show that the claimed function patentably distinguishes the claimed structure from the prior art structure. *Id.* at 1478.

With regard to claim 1's recitation that the sidewall "is configured to be readily deformable," Coleman teaches that the sides and base of its food bowl are "relatively thin" and "relatively flexible." Final Act. 9 (citing Coleman ¶ 17). Based on this flexibility, there is a reasonable basis to conclude that Coleman's sidewalls are capable of being "readily deformable by a hand of a user to reduce a volume of the storage area" of its food bowl. Final Act. 10 (finding that Coleman suggests its sidewalls are deformable); *In re Preda*, 401 F.2d 825, 826–27 (CCPA 1968) ("[I]n considering the disclosure of a reference, it is proper to take into account not only specific teachings of the reference but also the inferences which one skilled in the art would reasonably be expected to draw therefrom."). On this record, Appellant has not directed us to adequate evidence or provided persuasive technical reasoning that Coleman's flexible sidewalls would not be capable of being readily deformable as recited in claim 1.

With regard to claim 1's recitation that the tool portion includes "projections configured for use in breaking up and/or tenderizing the food product," Coleman teaches the base of its bowl is formed of irregularities (21) in the form of pyramids or relatively sharp concentric circles. Final Act. 8 (citing Coleman ¶ 16). This is similar to the shape of the projections described in Appellant's Specification for use in breaking up and/or tenderizing its food product. Ans. 5 (citing Spec. ¶ 20 (describing the projections of the tool portion as "pyramidal in shape so as to generally come to a sharp or rounded point")). The irregularities on the bottom of Coleman's container are designed to engage with the surface the bowl rests on to resist sliding and overturning when the food or drink in the container is being consumed. Coleman ¶ 16. To do so, the irregularities would have some relative degree of rigidity. Thus, in addition to preventing sliding and overturning of the container, there is a reasonable basis to conclude that Coleman's irregularities would also have been capable of being used for breaking up and/or tenderizing a food product.

Accordingly, Appellant's arguments do not identify reversible error in the Examiner's rejection. Thus, we sustain the rejection of claims 1, 3, 4, 7, and 12. Because we have relied on facts and reasoning not raised by the Examiner, we designate our affirmance of claims 1, 3, 4, 7, and 12 as a new ground of rejection. *In re Leithem*, 661 F.3d 1316, 1319 (Fed. Cir. 2011) ("Mere reliance on the same statutory basis . . . alone, is insufficient to avoid making a new ground of rejection when the Board relies on new facts and rationales not previously raised to the applicant by the examiner.").

*Claims 5 and 6*

Claim 5 depends from claim 4, which depends from claim 1. Appeal Br. 13 (Claims App.). Claims 4, 5, and 6 recite:

> 4. The packaged food product of claim 1, wherein the container further includes a rim extending around the least one sidewall, spaced from the bottom wall.
>
> 5. The packaged food product of claim 4, wherein the at least one sidewall tapers inward from the rim to the bottom wall.
>
> 6. The packaged food product of claim 5, wherein the at least one sidewall is tiered.

*Id.*

The Examiner finds that Coleman teaches the sidewall tapers inward from the rim toward the bottom wall. Final Act. 10 (citing Coleman Figs. 2, 3).

Appellant argues that a taper is not specifically taught. Appeal Br. 9.

Appellant's argument does not identify reversible error. As the Examiner finds, Coleman's Figures 2 and 3 depict a container where the sidewall is tiered and tapers inward from the rim to the bottom wall. Final Act. 10. Thus, we sustain the rejection of claims 5 and 6. Our affirmance of those claims is designated a new ground of rejection by virtue of the dependency of claims 5 and 6 on the newly rejected independent claim 1.

*Obviousness Rejection of Claims 8–10*

Claims 8, 9, and 10 recite:

> 8. The packaged food product of claim 1, further comprising: a pair of spaced finger recesses formed in the bottom wall and configured to be engaged by a user in deforming the at least one sidewall.

> 9. The packaged food product of claim 8, wherein the tool portion extends along the bottom wall between the pair of spaced finger recesses.
>
> 10. The packaged food product of claim 9, wherein the bottom wall is entirely formed from the pair of spaced finger recesses and the tool portion.

Appellant presents separate patentability arguments for claims 8, 9, and 10. Appeal Br. 10–11. Appellant argues that claim 11 stands or falls with claim 1. *Id.* at 11. We address each argument in turn below.

*Claim 8*

The Examiner relies on the same combined teachings of Coleman, Willemsen, and Shin as discussed above with regard to claim 1. Final Act. 11. In addition, the Examiner finds that Inomata (Figs. 10a, 10b, grooves 433) and Pankowski (Fig. 2, recesses 8) teach claim 8's finger recesses. *Id.* at 11–12 (citing Inomata Figures 10a, 10b; Pankowski 7, Fig. 2).

Appellant argues that Inomata has no disclosure that recesses 433 accommodate fingers or are used to deform the sidewall of the container. Appeal Br. 10.

In addition to Inomata, the Examiner finds that Pankowski teaches claim 8's "finger recesses." Final Act. 11–12. The Examiner finds that Pankowski teaches a telescopically collapsible drinking vessel having a bottom surface with recesses provided for engaging fingers to make it easier to push or pull apart the vessel. Final Act. 12 (citing Pankowski 7, Fig. 2); Ans. 14. The Examiner concludes that it would have been obvious to modify the bottom of Coleman's container to include finger recesses to facilitate

deforming Coleman's sidewall. Ans. 14. Appellant does not address or identify reversible error in the Examiner's finding or reasoning regarding modifying Coleman based on Pankowski. Appeal Br. 10; Reply Br. 5. Accordingly, we sustain the rejection of claim 8.

*Claim 9*

Appellant argues that the Examiner fails to provide a convincing line of reasoning for modifying Coleman, and instead concludes that it would have been obvious to include Coleman's irregularities between a pair of finger recesses as a matter of design choice. Appeal Br. 10–11.

Appellant's argument does not identify reversible error in the Examiner's rejection. Because the bottom of Coleman's container includes irregularities, and because Pankowski teaches including space between its finger recesses, the Examiner concludes that it would have been obvious to one of ordinary skill in the art to modify the bottom of Coleman's container so that the irregularities would have been positioned between a pair of finger recesses. Ans. 15. Appellant does not address or identify reversible error in the Examiner's finding or reasoning regarding modifying Coleman based on Pankowski. Appeal Br. 10; Reply Br. 5. Accordingly, we sustain the rejection of claim 9.

*Claim 10*

Appellant argues that it is not clear how the limitations of claim 10 are met. Appeal Br. 11.

Appellant's argument does not address or identify reversible error in the Examiner's finding or reasoning regarding modifying Coleman based on

Pankowski. Appeal Br. 10; Reply Br. 5. Accordingly, we sustain the rejection of claim 10.

As with claims 5 and 6 above, our affirmance of claims 8–10 is designated a new ground of rejection by virtue of the dependency of claims 8–10 on the newly rejected independent claim 1.

*Obviousness Rejection of Claim 11*

Appellant argues that claim 11 will stand or fall with claim 1. Appeal Br. 11. To the extent that Appellant is relying on the arguments for claim 1 for the separate patentability of claim 11, we do not find such arguments identify reversible error in the rejection of claim 11 for the same reasons as discussed above with respect to claim 1. Accordingly, we sustain the rejection of claim 11. Our affirmance of claim 11 is designated a new ground of rejection by virtue of the dependency of claim 11 on the newly rejected independent claim 1.

## CONCLUSION

The Examiner's rejections of claims 1 and 3–12 are affirmed and designated as new grounds of rejections as indicated below.

## DECISION SUMMARY

The following table summarizes our decision:

| **Claim(s) Rejected** | **35 U.S.C. §** | **Reference(s)/Basis** | **Affirmed** | **Reversed** | **New Ground** |
|---|---|---|---|---|---|
| 1, 3–7, 12 | 103 | Coleman, Loden, Willemsen, Shin | 1, 3–7, 12 | | 1, 3–7, 12 |

| | | | | | |
|---|---|---|---|---|---|
| 8–10 | 103 | Coleman, Loden, Willemsen, Shin, Inomata, Pankowski | 8–10 | | 8–10 |
| 11 | 103 | Coleman, Loden, Willemsen, Shin, Taylor | 11 | | 11 |
| **Overall Outcome** | | | 1, 3–12 | | 1, 3–12 |

RESPONSE

This decision contains a new ground of rejection pursuant to 37 C.F.R. § 41.50(b). Section 41.50(b) provides "[a] new ground of rejection pursuant to this paragraph shall not be considered final for judicial review." Section 41.50(b) also provides:

> When the Board enters such a non-final decision, the appellant, within two months from the date of the decision, must exercise one of the following two options with respect to the new ground of rejection to avoid termination of the appeal as to the rejected claims:
>
> (1) *Reopen prosecution*. Submit an appropriate amendment of the claims so rejected or new Evidence relating to the claims so rejected, or both, and have the matter reconsidered by the examiner, in which event the prosecution will be remanded to the examiner. The new ground of rejection is binding upon the examiner unless an amendment or new Evidence not previously of Record is made which, in the opinion of the examiner, overcomes the new ground of rejection designated in the decision. Should the examiner reject the claims, appellant may again appeal to the Board pursuant to this subpart.
>
> (2) *Request rehearing*. Request that the proceeding be reheard under § 41.52 by the Board upon the same Record. The request for rehearing must address any new ground of rejection and state with particularity the points believed to have been

> misapprehended or overlooked in entering the new ground of rejection and also state all other grounds upon which rehearing is sought.

Further guidance on responding to a new ground of rejection can be found in the Manual of Patent Examining Procedure § 1214.01.

No time period for taking any subsequent action in connection with this appeal may be extended under 37 C.F.R. § 1.136(a). *See* 37 C.F.R. § 1.136(a)(1)(iv).

AFFIRMED; 37 C.F.R. § 41.50(b)

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 17/136,152 | 12/29/2020 | Daniel Christopher Budd | 8913US02 | 4609 |

106306 7590 01/23/2024
DIEDERIKS & WHITELAW, PLC
4196 Merchant Plaza, #815
Woodbridge, VA 22192

| EXAMINER | |
|---|---|
| THAKUR, VIREN A | |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1792 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 01/23/2024 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

gmi.mail@dwpatentlaw.com
mail@dwpatentlaw.com

PTOL-90A (Rev. 04/07)

UNITED STATES PATENT AND TRADEMARK OFFICE

———————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

———————

*Ex parte* DANIEL CHRISTOPHER BUDD,
JACQUELINE IVERSEN, and TROND ERIK TOLLEFSEN

———————

Appeal 2023-003723
Application 17/136,152
Technology Center 1700

———————

Before KAREN M. HASTINGS, JEFFREY B. ROBERTSON, and JENNIFER R. GUPTA, *Administrative Patent Judges.*

GUPTA, *Administrative Patent Judge.*

DECISION ON REQUEST FOR REHEARING[1]

STATEMENT OF THE CASE

Appellant[2] has filed a Request for Rehearing ("Req. Reh'g) dated December 19, 2023, of the Board's Decision ("Dec.") dated November 1, 2023, affirming the Examiner's decision to reject claims 1 and 3–12 under 35 U.S.C. § 103.

We have reconsidered our Decision, in light of Appellant's arguments in the Request for Rehearing, but deny the request to modify our Decision

---

[1] In this Decision, we refer to the Specification filed Dec. 29, 2020 ("Spec.").

[2] "Appellant" refers to "applicant" as defined in 37 C.F.R. § 1.42. 37 C.F.R. § 1.42 (2022). Appellant identifies the real party in interest as Blue Buffalo Enterprises, Inc. Appeal Br. 3.

because Appellant has not persuaded us that we misapprehended or overlooked any points of law or fact that would require a different outcome. *See* 37 C.F.R. § 41.52.

Appellant argues that the Board erred by not relying on the proper standard for interpreting the "configured to" claim language when applying the new ground of rejection based on Coleman. Req. Reh'g 2, 6. Appellant argues that the "configured to" language in the claim is a structural limitation, and thus Coleman's structure must be actually designed for, not merely "capable of," performing the recited function. *Id.* at 5.

Appellant's arguments do not persuade us of error in our Decision.

Appellant's Specification discloses that the thickness and shape of the sidewall have an effect on deformability. Spec. ¶ 18 (explaining that by constructing the sidewall and bottom wall of the food container magnitudes thinner than the rim, the sidewall is "readily deformable" by a user using one or both hands without any tools or requiring an above average amount of strength). Spec. ¶¶ 18–19 (explaining that the sidewall has a slight taper, and is also preferably tiered from the rim to the bottom wall to enhance deformability); *see also* Fig. 4 of Appellant's application, reproduced below (showing upper and lower tiered sections 340 and 345 between rim 105 and bottom wall 300).



FIG. 4

Fig. 4 of Appellant's application depicts a side view of the container.

Appellant's Specification discloses that the projections are preferably pyramidal in shape so as to generally come to a sharp or rounded point and can be manually pressed into a food product to break up and/or tenderize the food product. Spec. ¶ 20.

Based on Appellant's Specification and Figures, we interpret the language "readily deformable by a hand of a user to reduce a volume of the storage area," and "for use in breaking up and/or tenderizing the food product after the food product is removed from the storage area" following "configured to" in claim 1 as functional language that fails to distinguish the structure of the claimed packaged food product over the applied prior art.

Figure 2 of Coleman,[3] reproduced below, teaches a portable food container that includes a sidewall and a bottom wall that combine to define a storage area (bowl 2), where the bottom wall has integrally formed irregularities (21). Coleman ¶ 13, Fig. 2.

[3] Coleman et al., US 2004/0089583 A1, published May 13, 2004.



FIG. 2

Figure 2 above is a side view of Coleman's food container.

Coleman need not explicitly teach that its sidewall or projections perform all the functions recited in claim 1 as long as Coleman teaches a structure that is capable of performing the claimed functions. *In re Schreiber*, 128 F.3d 1473, 1477 (Fed. Cir. 1997) (explaining that where there is reason to conclude that the structure of the prior art is inherently capable of performing the claimed function, the burden shifts to the applicant to show that the claimed function patentably distinguishes the claimed structure from the prior art structure).

Given that Coleman teaches that the sides and base of its container are "relatively thin" and "relatively flexible" as compared with the container's rim (Coleman ¶ 17), and are slightly tapered from the rim (22) to the bottom (21), as shown in Coleman's Figure 2, reproduced above, there is a reasonable basis to conclude that Coleman's sidewall, like the claimed sidewall, is configured to be readily deformable and thus inherently capable of performing the claimed function, i.e., being "readily deformable by a hand of a user to reduce a volume of the storage area" of its food bowl. Claim 1. Likewise, because Coleman teaches that the base of its bowl is formed of irregularities (21) in the form of pyramids or relatively sharp concentric circles, there is a reasonable basis to conclude that Coleman's

irregularities, like the claimed projections, are configured to and thus inherently capable of "breaking up and/or tenderizing the food product after the food product is removed from the storage area." Claim 1; Coleman ¶ 16; *see also* Coleman's Fig. 2, reproduced above. Appellant does not persuasively argue or direct us to sufficient evidence that Coleman's container is not capable of performing the functionally defined limitations. *Schreiber*, 128 F.3d at 1478. Contrary to Appellant's argument, there is no per se rule that requires "configured to" to impart the mental step of designing the structure for the express function recited. It has long been held that "apparatus claims cover what a device *is,* not what a device *does.*" *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1468 (Fed. Cir. 1990). At the end of the day, one must bear in mind that interpreting non-functional claim terms in a way that makes infringement or validity turn on their function is improper. *Paragon Solutions, LLC v. Timex Corp.,* 566 F.3d 1075, 1091 (Fed. Cir. 2009). More is required to overcome the presumption that the structure is the same or obvious from Coleman's structure.

Finding no persuasive merit in Appellant's arguments made in the Request for Rehearing, we decline to modify our decision to affirm the Examiner's § 103 rejections of the appealed claims, and designate the affirmance as new grounds of rejection. This Decision on the Request for Rehearing incorporates our Decision and is final for the purposes of judicial review. *See* 37 C.F.R. § 41.52(a)(1).

CONCLUSION

Appellant's request to modify the Board's Decision affirming the Examiner's rejection is denied.

DECISION SUMMARY

The following table summarizes our Decision on Rehearing:

| Claim(s) | 35 U.S.C. § | Reference(s)/Basis | Denied | Granted |
|---|---|---|---|---|
| 1, 3–7, 12 | 103 | Coleman, Loden, Willemsen, Shin | 1, 3–7, 12 | |
| 8–10 | 103 | Coleman, Loden, Willemsen, Shin, Inomata, Pankowski | 8–10 | |
| 11 | 103 | Coleman, Loden, Willemsen, Shin, Taylor | 11 | |
| **Overall Outcome** | | | 1, 3–12 | |

The following table summarizes the outcome of the Appeal after rehearing:

| Claim(s) Rejected | 35 U.S.C. § | Reference(s)/Basis | Affirmed | Reversed | New Ground |
|---|---|---|---|---|---|
| 1, 3–7, 12 | 103 | Coleman, Loden, Willemsen, Shin | 1, 3–7, 12 | | 1, 3–7, 12 |
| 8–10 | 103 | Coleman, Loden, Willemsen, Shin, Inomata, Pankowski | 8–10 | | 8–10 |
| 11 | 103 | Coleman, Loden, Willemsen, Shin, Taylor | 11 | | 11 |

| | | | | | |
|---|---|---|---|---|---|
| **Overall Outcome** | | | 1, 3–12 | | 1, 3–12 |

No time period for taking any subsequent action in connection with this appeal may be extended under 37 C.F.R. § 1.136(a). *See* 37 C.F.R. § 1.136(a)(1)(iv) (2022).

<u>DENIED</u>

# PACKAGED FOOD PRODUCT AND METHOD OF PRODUCING THE PACKAGED FOOD PRODUCT

## BACKGROUND OF THE INVENTION

**[0001]** The present invention pertains to the art of food production and, more particularly, to packaging for food products.

**[0002]** Food products are often packaged prior to sale. Such packaging can take the form of cans, jars, boxes or bags, for example. In the case of pet food, such as wet cat or dog food, cans are a common packaging type. When the wet food is served, consumers frequently remove the food from the can and place it into or onto a bowl, dish or plate, for example, where the food may then be broken up or otherwise prepared for serving. This requires a spoon or fork, both for the serving and the chopping. However, many consumers would prefer not to use a utensil for this task that they themselves also eat with, necessitating the ownership of one or more dedicated pet food utensils. At the very least, this process results in additional dirty utensils that must be cleaned. Accordingly, it would desirable to provide a way for consumers to serve wet pet food without using a utensil.

**[0003]** In addition, one reason why a consumer might use a utensil to serve wet pet food from a can is that the can contains multiple servings and the consumer only wishes to serve part of the can's contents. Accordingly, it would also be desirable to provide wet pet food in single-serve packaging.

## SUMMARY OF THE INVENTION

**[0004]** The present invention achieves the above goals through the use of packaging that is readily deformable by hand, with the deformation causing the contents of the packaging to exit the packaging. Preferably, the packaging is sized to provide a single serving. Additionally, the packaging includes structure to help break up and/or tenderize the contents after they have been dispensed.

**[0005]** In particular, a packaged food product comprises a container and a food product. The container includes a body having at least one sidewall extending away from a supporting rim

and leading to a bottom wall. The at least one sidewall and the bottom wall define a storage area for retaining the food product. The at least one sidewall is configured to be readily deformable by a hand of a user to reduce a volume of the storage area. To assist in deforming the sidewall, the bottom wall of the body includes pre-formed finger recesses. The packaged food product is configured such that reducing the volume of the storage area causes the food product to exit the storage area. The food product can take various forms, such as a wet cat food or a wet dog food. Also, the bottom wall of the body is provided, between the finger recesses, with a series of projections collectively defining a tool portion of the container. Upon removing the food from the storage area of the container, the tool portion can be advantageously employed to further prepare the food prior to serving. For instance, when the food includes meat, the projections can be used to press the meat in order to break-up and/or tenderize the meat or other solid portions, while avoiding the need to dirty a separate utensil.

**[0006]** Additional objects, features and advantages of the invention will become more readily apparent from the following detailed description of preferred embodiments thereof when taken in conjunction with the drawings wherein like reference numerals refer to common parts in the several views.

## BRIEF DESCRIPTION OF THE DRAWINGS

**[0007]** Figure 1 is a perspective view of two packaged food products produced in accordance with the present invention.

**[0008]** Figure 2 is a perspective view of the two packaged food products of Figure 1, but with a lid or seal on one of the packaged food products partially peeled away to expose a food product.

**[0009]** Figure 3 is a top view of a container of the packaged food product of Figure 2, with the food product omitted.

**[0010]** Figure 4 is a side view of the container.

**[0011]** Figure 5 is a perspective view of the container showing the bottom of the container being used to break up and/or tenderize the food product.

## DETAILED DESCRIPTION OF THE INVENTION

**[0012]** Detailed embodiments of the present invention are disclosed herein. However, it is to be understood that the disclosed embodiments are merely exemplary of the invention that may be embodied in various and alternative forms. The figures are not necessarily to scale, and some features may be exaggerated or minimized to show details of particular components. Therefore, specific structural and functional details disclosed herein are not to be interpreted as limiting but merely as a representative basis for teaching one skilled in the art how to construct and employ the present invention.

**[0013]** As discussed above, pet food, such as wet cat or dog food, is commonly packaged in cans. To serve such pet food, a consumer would use a separate utensil to remove the pet food from the can and break it up. In some cases, only a portion of the pet food is removed from the can. This process necessitates the cleaning of the utensil and, for some consumers, a dedicated pet food utensil. The present invention was developed to address this problem. Specifically, the present invention provides a container with a body defined by at least one sidewall and a bottom wall which establish a storage area for retaining a food product, with the at least one sidewall being readily deformable by hand to reduce a volume of the storage area. Reducing the volume of the storage area causes the food product to exit the storage area. In other words, the user can squeeze the container to dispense the food, avoiding the need for a separate utensil. The bottom wall of the container preferably includes a pair of preformed finger recesses to assist in deforming the container and expelling the food. The container is preferably sized to hold a single serving of the food product. Therefore, the user does not need to try to serve only a portion of the food product. In addition, a portion of the bottom wall of the container, between the finger recesses, is formed with a plurality of spaced projections which establish an integrally formed tool portion of the container. This structure can be used to further process the food prior to serving, specifically by breaking up and/or tenderizing the food product after it has been dispensed, while again avoiding the need for a separate utensil.

**[0014]** With reference to Figure 1, two symmetrical, mirror image packaged food products 100 and 101 are shown. Packaged food products 100 and 101 are attached to one another and can be sold as a unit. However, it should be recognized that packaged food products

100 and 101 can also be sold individually or in larger quantities (with additional packaged food products attached thereto).

**[0015]** Packaged food products 100 and 101 are functionally identical but their shapes are mirror images of one another, with the plane of symmetry being located at their point (connection line 102) of attachment. More particularly, packaged food product 100 has a rim 105 and a lid 110 in sealing contact with rim 105, while packaged food product 101 has a rim 106 and a lid 111 in sealing contact with rim 106. Rim 105 is attached to rim 106 to attach packaged food products 100 and 101 to one another. This connection is obscured by lids 110 and 111 but generally extends between points 115 and 116. Packaged food products 100 and 101 can be attached by molding a single substrate and then blow molding two containers from the substrate, for example. When desired, packaged food products 100 and 101 can be readily detached from each other through a back and forth bending operation about connection line 102 extending between points 115 and 116. Since packaged food product 101 is nearly identical to packaged food product 100, packaged food product 101 will not be discussed further.

**[0016]** Turning to Figure 2, packaged food product 100 is shown with lid 110 peeled partially away from rim 105 to expose a food product 200. Food product 200 is a single serving of a wet pet food, *e.g.*, wet cat food or wet dog food. However, food product 200 can take other forms in other embodiments. Rim 105 and lid 110 form part of a container 205, which is configured to retain food product 200. Container 205 further includes a sidewall 210 extending away from rim 105, with sidewall 210 being shown to be an annular wall.

**[0017]** In Figure 3, food product 200 is omitted so that a bottom wall 300 of container 205 can be seen. Sidewall 210 and bottom wall 300 together define a storage area 305 in which food product 200 is retained. As should be recognized based on Figures 2 and 3, food product 200 is in contact with bottom wall 300 during storage and is typically in contact with at least part of sidewall 210 as well. While one exemplary arrangement for sidewall 210 and bottom wall 300 has been illustrated, it should be understood that many different arrangements can be used in accordance with the present invention. In other words, the shape of storage area 305 can vary. For example, the single sidewall 210 can be replaced with multiple walls, or sidewall 210 and bottom wall 300 can be combined, with storage area 305 taking on a hemispherical shape. In general, container 205 should have at least one wall defining storage area 305.

**[0018]** Preferably, molding, such as blow molding, is used to create sidewall 210, bottom wall 300 and storage area 305. In a preferred form, a flat plastic substrate in the shape of rim 105 is subjected to blow molding to cause the center of the substrate to expand. The expansion is controlled in such a way that the center portion becomes sidewall 210 and bottom wall 300, thereby also forming storage area 305. Based on the construction of the overall mold used to make container 205, the bottom wall is preferably formed with a pair of spaced finger recesses 320 and 325, as well as a central tool portion 330, as will be discussed in detail below. In any case, as a result of this formation process, sidewall 210 and bottom wall 300 are magnitudes thinner than rim 105. In particular, by this construction, the thickness of sidewall 210 and bottom wall 300 is established so that at least one of sidewall 210 and bottom wall 300 is readily deformable. For purposes of the present invention, by "readily deformable" it is meant that a user can deform sidewall 210 or bottom wall 300 by hand (*i.e.*, using one or both hands and without any tools) without requiring an above average amount of strength. This allows the user to push one or both of sidewall 210 and bottom wall 300 inward (*i.e.*, readily collapsing the same into storage area 305) to reduce the volume of storage area 305. In particular, a user can engage rim 105 with a finger or two from each hand while pushing upon bottom wall 300 with his/her thumbs arranged at finger recesses 320 and 325 to readily deform sidewall 210 and reduce the volume of storage area 305. Reducing the volume of storage area 305 causes food product 200 to exit storage area 305. As a result, the user can dispense food product 200 without using a utensil.

**[0019]** While the discussion above focuses on the structure of sidewall 210 and bottom wall 300, it should be recognized that the shapes of sidewall 210 and bottom wall 300 also have an effect on their deformability. Accordingly, this parameter is also adjusted to provide the desired degree of deformability. In general, at least one of the walls defining storage area 305 is configured to be readily deformable and has at least a slight taper from rim 105 to bottom wall 300 as perhaps best shown in Figure 4. To further enhance the collapsing operation, sidewall 210 is also preferably tiered (shown in Figure 4 with upper and lower tiered sections 340 and 345, but additional tiers could be provided).

**[0020]** Turning further to Figures 4 and 5, central tool portion 330 is shown extending along part of bottom wall 300, specifically between the pair of spaced finger recesses 320 and 325 which along with tool portion 330 preferably defines bottom wall 300 in its entirety. Tool

portion 330 is constituted by a plurality of adjacently arranged projections, one of which is labeled 375. In the preferred embodiment shown, projections 375 are pyramidal in shape so as to generally come to a sharp or rounded point, although other geometric shapes could be employed. With this construction, container 205 is integrally formed with tool portion 330. In particular, the user can use tool portion 330 to further process food product 200 prior to serving the food product. In particular, tool portion 330 can be manually pressed into food product 200 to break up and/or tenderize food product 200. This is particularly advantageous when food product 200 includes meat which can benefit from being broken up and/or tenderized prior to being consumed.

**[0021]** Based on the above, it should be readily apparent that the present invention provides a way for consumers to dispense wet pet food from a container without using a separate utensil. In addition, the invention provides for further processing the food prior to serving by using a specifically structured portion of the container to further process the food. While certain preferred embodiments of the present invention have been set forth, it should be understood that various changes or modifications could be made without departing from the spirit of the present invention. In general, the invention is only intended to be limited by the scope of the following claims.

Application Serial No. 17/136,152
Reply to Office Action Dated July 18, 2022
Replacement Drawing






FIG. 1




FIG. 2

Application Serial No. 17/136,152
Reply to Office Action Dated July 18, 2022
Replacement Drawing

2/3




FIG. 3




FIG. 4




FIG. 5

**Amendments to the Claims:**

This listing of claims will replace all prior versions, and listings, of claims in the application:

**Listing of Claims:**

1. (original) A packaged food product comprising:

a container including at least one sidewall and a bottom wall which combine to define a storage area, said bottom wall having an integrally formed, tool portion; and

a food product retained within the storage area and in contact with the at least one sidewall, wherein the at least one sidewall is configured to be readily deformable by a hand of a user to reduce a volume of the storage area, and the packaged food product is configured such that reducing the volume of the storage area causes the food product to exit the storage area for further processing with the tool portion, wherein the tool portion includes a plurality of spaced projections configured for use in breaking up and/or tenderizing the food product after the food product is removed from the storage area.

2. (canceled)

3. (currently amended) The packaged food product of ~~claim 2~~ claim 1, wherein each of the plurality of spaced projection is pyramidal shaped.

4. (original) The packaged food product of claim 1, wherein the container further includes a rim extending around the least one sidewall, spaced from the bottom wall.

5. (original) The packaged food product of claim 4, wherein the at least one sidewall tapers inward from the rim to the bottom wall.

6. (original) The packaged food product of claim 5, wherein the at least one sidewall is tiered.

7. (original) The packaged food product of claim 4, wherein the container further includes a lid in contact with the rim, with the lid sealing the storage area.

8. (original) The packaged food product of claim 1, further comprising: a pair of spaced finger recesses formed in the bottom wall and configured to be engaged by a user in deforming the at least one sidewall.

9. (original) The packaged food product of claim 8, wherein the tool portion extends along the bottom wall between the pair of spaced finger recesses.

10. (original) The packaged food product of claim 9, wherein the bottom wall is entirely formed from the pair of spaced finger recesses and the tool portion.

11. (original) The packaged food product of claim 1, wherein the food product is a wet cat food or a wet dog food.

12. (original) The packaged food product of claim 1, wherein the container constitutes a first container, and the food product constitutes a first food product, the packaged food product further comprising a second container detachably connected to the first container and a second food product retained within the second container.

13. (currently amended - withdrawn) A method of serving a food product from a container including at least one sidewall and a bottom wall defining a storage area retaining the food product, and a tool portion integrally formed along part of the bottom wall, the method comprising:

reducing the volume of the storage area by manually deforming the at least one sidewall to reduce a volume of the storage area and cause the food product to exit the storage area; and

using the tool portion of the container to break up and/or tenderize the food product prior to serving the food product, wherein the tool portion includes a plurality of

spaced projections for pressing into the food product in order to break up and/or tenderize the food product.

14. (withdrawn) The method of claim 13, wherein using the tool portion includes manually pressing the tool portion into the food product.

15. (canceled)

16. (currently amended - withdrawn) The method of ~~claim 15~~ claim 14, wherein pressing the tool portion into the food product includes pushing pyramidal shaped projections into the food product.

17. (currently amended - withdrawn) The method of ~~claim 15~~ claim 14, further comprising engaging a pair of spaced finger recesses formed in the bottom wall in deforming the at least one side wall.

18. (withdrawn) The method of claim 13, wherein the container further includes a rim extending around the least one sidewall, spaced from the bottom wall, with the at least one sidewall tapering inward from the rim to the bottom wall, and wherein reducing the volume of the storage area includes collapsing the tapering at least one sidewall.

19. (withdrawn) The method of claim 13, wherein the container further includes a lid sealed about the rim, said method further comprising peeling the lid from the rim to expose the food product prior to reducing the volume of the storage area.

20. (withdrawn) The method of claim 13, further comprising: detaching the container from a symmetrical, mirror image container prior to peeling the lid.

21. (withdrawn) The method of claim 13, wherein the food product is a wet cat food or a wet dog food.

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 17th day of July, 2024, I caused this Brief of Appellant to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Monica B. Lateef
Amy J. Nelson
Farheen Yasmeen Rasheed
Shehla Wynne
UNITED STATES PATENT AND TRADEMARK OFFICE
Post Office Box 1450
Mail Stop 8
Alexandria, Virginia 22313
(571) 272-9035

*Counsel for Appellee*

/s/ Everett G. Diederiks, Jr.
*Counsel for Appellant*

/s/ Nicholas Whitelaw
*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):
[ X ] this brief contains [*4,312*] words.
[ ] this brief uses a monospaced type and contains [*state the number of*] lines of text.

2. This brief complies with the typeface and type style requirements because:
[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 365*] in [*14pt Times New Roman*]; *or*
[ ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: July 17, 2024

/s/ Everett G. Diederiks, Jr.
*Counsel for Appellant*

/s/ Nicholas Whitelaw
*Counsel for Appellant*