Appeal No. 2024-1611
(Serial No. 17/136,152)

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

**IN RE: BLUE BUFFALO ENTERPRISES, INC.,**
**APPELLANT.**

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board

# BRIEF FOR APPELLEE—DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE

FARHEENA Y. RASHEED
Solicitor

AMY J. NELSON
Senior Counsel for Patent Policy and Litigation

MONICA B. LATEEF
SHEHLA WYNNE
Associate Solicitors

Office of the Solicitor
U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313
(571) 272-9035

*Attorneys for the Director of the United States Patent and Trademark Office*

September 27, 2024

## <u>REPRESENTATIVE CLAIM ON APPEAL</u>

1. A packaged food product comprising:

a container including at least one sidewall and a bottom wall which combine to define a storage area, said bottom wall having an integrally formed, tool portion; and

a food product retained within the storage area and in contact with the at least one sidewall,

wherein the at least one sidewall is configured to be readily deformable by a hand of a user to reduce a volume of the storage area, and the packaged food product is configured such that reducing the volume of the storage area causes the food product to exit the storage area for further processing with the tool portion,

*wherein the tool portion includes a plurality of spaced projections configured for use in breaking up and/ or tenderizing the food product after the food product is removed from the storage area.*

Appx25 (disputed claim limitation italicized; formatting added).

# TABLE OF CONTENTS


I. Statement of the Issues ....................1

II. Statement of the Case ....................2

A. The Claimed Invention: Packaged Food Product ....................3

B. Prior Art....................6

1. Coleman: Pet Food Package ....................6

2. Other Prior Art ....................7

C. The Board's and Examiner's Findings....................8

D. The Board's Decision on Rehearing ....................11

III. Summary of the Argument ....................14

IV. Argument ....................16

A. Standard of Review ....................16

B. Substantial Evidence Supports the Board's Findings That The Claimed Invention Would Have Been Obvious....................17

1. The Food Container of Claim 1 Is Indistinguishable from Coleman's Food Container Based on the Recited Structural Features ....................18

2. Substantial Evidence Supports the Board's Finding that Coleman's Irregularities Are Functionally Equivalent to Blue Buffalo's Claimed Projections ....................19

C. Blue Buffalo Fails to Establish Reversible Error in the Board's Obviousness Determination ....................22

V. Conclusion ....................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*,
672 F.3d 1335 (Fed. Cir. 2012) ....................................................11, 15, 23, 24

*In re Bayer Aktiengesellschaft*,
488 F.3d 960 (Fed. Cir. 2007) ..........................................................................22

*In re Best*,
562 F.2d 1252 (C.C.P.A. 1977) ........................................................................21

*Consol. Edison Co. v. NLRB*,
305 U.S. 197 (1938)..........................................................................................16

*In re Constr. Equip. Co.*,
665 F.3d 1254 (Fed. Cir. 2011) ........................................................................16

*In re Danly*,
263 F.2d 844 (C.C.P.A. 1959) ....................................................................19, 24

*In re Gardiner*,
171 F.2d 313 (C.C.P.A. 1948) ....................................................................19, 24

*In re Gartside*,
203 F.3d 1305 (Fed. Cir. 2000) ........................................................................16

*In re Giannelli*,
739 F.3d 1375 (Fed. Cir. 2014) ...........................................................15, 23, 24

*Hewlett-Packard Co. v. Bausch & Lomb Inc.*,
909 F.2d 1464 (Fed. Cir. 1990) ..................................................................13, 18

*In re Jolley*,
308 F.3d 1317 (Fed. Cir. 2002) ........................................................................16

*In re King*,
801 F.2d 1324 (Fed. Cir. 1986) ........................................................................21

*KSR Intern. Co. v. Teleflex*,
550 U.S. 398 (2007)....................17

*In re Leithem*,
661 F.3d 1316 (Fed. Cir. 2011)....................10

*In re Michlin*,
256 F.2d 317 (C.C.P.A. 1958)....................18

*In re Mousa*,
479 Fed.Appx. 348 (Fed. Cir. 2012)....................21

*In re Mouttet*,
686 F.3d 1322 (Fed. Cir. 2012)....................16

*In Re Oelrich*,
666 F.2d 578 (C.C.P.A. 1981)....................24

*Paragon Solutions, LLC v. Timex Corp.*,
566 F.3d 1075 (Fed. Cir. 2009)....................13, 19

*In Re Robertson*
169 F.3d 743 (Fed. Cir. 1999)....................24

*In re Schreiber*,
128 F.3d 1473 (Fed. Cir. 1997)....................*passim*

*In re Swinehart*,
439 F.2d 210 (C.C.P.A. 1971)....................19, 21

*In re Watts*,
354 F.3d 1362 (Fed. Cir. 2004)....................16

**Statutes**

35 U.S.C. § 103....................17

## STATEMENT OF RELATED CASES

The Director is not aware of any other appeal in connection with the patent application at issue in this appeal that has previously been before this Court. The Director is also unaware of any other cases pending in this or any other court that will directly affect, or be directly affected by, this Court's decision in the pending appeal.

## I. STATEMENT OF THE ISSUES

Blue Buffalo Enterprises, Inc.'s ("Blue Buffalo") claims are directed to a packaged food product, especially for pets. Representative claim 1 recites a packaged food product comprising a container and a food product. The container has a sidewall and a bottom wall to form a "storage area" to hold the food product. The storage area also includes a tool potion integrally formed with the bottom wall. Relevant to this appeal, the tool portion includes "a plurality of spaced projections configured for use in breaking up and/or tenderizing the food product after the food product is removed from the storage area."

In finding that claim 1 would have been obvious, the Board primarily relied on Coleman, which discloses a packaged food container for pet food comprising a plurality of spaced irregularities in the form of pyramids or sharp concentric circles. The Board found that the "configured for use in breaking up and/or tenderizing the food product" limitation is a functional limitation. The Board also found that Coleman's disclosed irregularities are structurally equivalent to Blue Buffalo's claimed projections, which establishes a presumption that Coleman's irregularities are inherently capable of performing the function of Blue Buffalo's claimed projections. The Board found that, under applicable law, the burden thus shifts to Blue Buffalo to prove that Coleman's irregularities cannot function in the same manner as Blue Buffalo's projections. Finding that Blue Buffalo did not persuasively

argue or direct the Board to sufficient evidence that Coleman's irregularities are not capable of performing the claimed function, the Board found that Coleman satisfies the limitation and that representative claim 1 would have been obvious over the combination of Coleman and three other prior art references.

The sole issue on appeal is whether substantial evidence supports the Board's finding that Coleman satisfies the "configured for use in breaking up and/or tenderizing the food product" limitation. Because the Board's factual findings and its conclusion that representative claim 1 would have been obvious is supported by substantial evidence and correct as a matter of law, this Court should affirm the Board's decision.

## II. STATEMENT OF THE CASE

On December 29, 2020, Blue Buffalo filed the instant patent application, entitled "Packaged Food Product and Method of Producing the Packaged Food Product." Appx27-39. The Examiner rejected claims 1 and 3-12 as obvious over the prior art. Appx375-394; *see also* Appx460-476. In particular, the Examiner rejected

claims 1, 3-7 and 12 as obvious over Coleman[1] in view of Loden[2], Willemsen[3], and Shin[4], and claims 8-11 as obvious over the same prior art along with additional references. Appx383-394.[5] The Patent Trial and Appeal Board affirmed the Examiner's rejections but revised them somewhat and therefore designated them as new grounds of rejection. Appx1-13. Blue Buffalo sought rehearing (Appx504-509), which the Board considered and denied. Appx15-21. This appeal followed.

### A. The Claimed Invention: Packaged Food Product

Blue Buffalo's application is directed toward packaged food products. Appx27, ¶¶ 1-2. The application explains that the food product can be wet cat or dog food. *Id.*; Appx36 (Abstract). The application, referencing Figures 1-5, describes a package having contents that can be emptied. Appx29, ¶ 13. The package also has a structure, that is on the outside of the package, projections 375, that can be used to

---

[1] U.S. Patent Application Publication No. 2004/0089583 A1 (filed Nov. 7, 2002; published May 13, 2004) ("Coleman"). Appx694-699.

[2] U.S. Patent No. 7,959,346 to Bill Loden (issued June 14, 2011) ("Loden"). Appx683-693.

[3] U.S. Patent Application Publication No. 2014/0263375 A1 (filed Mar. 30, 2012; published Sep. 18, 2014) ("Willemsen"). Appx700-709.

[4] Korean Patent Application Publication No. 10-2010-0110619 A (filed Apr. 3, 2009; published Oct. 13, 2010) ("Shin"). Appx665-682.

[5] Claims 13-21 were non-elected pursuant to a restriction requirement and thus were withdrawn from consideration. *See* Appx140.

break up and/or tenderize the contents after the contents have been emptied from the package. *See* Appx29-32, ¶¶ 13-20; Appx37-39 (Figs. 1-5).

Referring to Figures 2 and 3, reproduced below, the specification discloses that the packaging includes at least one sidewall 210 and a bottom wall 300 to form a storage area for holding a food product. Appx29-30, ¶¶ 13-17; *see also* Appx37-38 (Figs. 2-3).




FIG. 2

2/3




FIG. 3

The storage area 305 is also includes a central tool portion 330 extending

along the bottom wall 300. *See* Appx38 (Figs. 3-4). As shown in Figures 4 and 5, reproduced below, the central tool portion 330 contains a plurality of adjacently arranged projections 375. Appx31-32, ¶ 20.




FIG. 4




FIG. 5

Projections 375 are shown as pyramidal, but could have other geometries, and end in a sharp or rounded point. Appx31-32, ¶ 20. They function to break up and/or

tenderize the dispensed food product 200. *Id*.

Representative claim 1 recites:

> 1. A packaged food product comprising:
>
> a container including at least one sidewall and a bottom wall which combine to define a storage area, said bottom wall having an integrally formed, tool portion; and
>
> a food product retained within the storage area and in contact with the at least one sidewall,
>
> wherein the at least one sidewall is configured to be readily deformable by a hand of a user to reduce a volume of the storage area, and the packaged food product is configured such that reducing the volume of the storage area causes the food product to exit the storage area for further processing with the tool portion,
>
> *wherein the tool portion includes a plurality of spaced projections configured for use in breaking up and/or tenderizing the food product after the food product is removed from the storage area*.

Appx25 (disputed claim limitations italicized; formatting added).

## B. Prior Art

### 1. Coleman: Pet Food Package

Coleman discloses a portable disposable pet food package. Appx694 (Abstract). Coleman describes having a roughened bowl bottom connected to a relatively thin and relatively flexible wall to define a storage area. Appx697, ¶¶ [0002], [0013]; Appx697-698, ¶ [0017]. As shown in Coleman's Figures 2 and 3, reproduced on the next page, the roughened bowl bottom includes a plurality of spaced irregularities 21 in the form of pyramids or sharp concentric circles. Appx695

(Figs. 2 and 3); Appx697, ¶ [0016]. Coleman states that the irregularities 21 function to prevent the container from slipping, as food or drink is consumed, and to strengthen the container. Appx697, ¶ [0016].




FIG. 2




FIG. 3

### 2. Other Prior Art

Loden teaches a bottom wall with an integrally formed tool portion when it discloses a beverage mixing vessel or drink shaker that has internal features effective for breaking up ice when shaken. Appx683 (Abstract). The internal features are pyramidal-shaped projections 126 that are integrally formed with a bottom wall of a

container 112. *See* Appx689 (Fig. 14); *see also* Appx692-693, 4:67-5:4; Appx693, 6:38-39.

Willemsen and Shin each teaches the readily deformable wall. Specifically, Willemsen is directed toward a container for metering liquid material. Appx700 (Abstract). Willemsen discloses that the container 1 has a collapsible sidewall 10/20/30 for the purpose of being able to access/empty the contents of the container in a metered manner. Appx704, ¶ [0001]; Appx701 (Fig. 1); *see also* Appx707, ¶¶ [0045]-[0046]; Appx708, ¶ [0050]. Shin discloses a disposable container having a stretchable configuration. Appx677, lines 15-16. The container can be stretched and contracted up and down so to provide a space for storing food when stretched up and to reduce the waste disposal volume when contracted down. *Id*. at lines 18-22; Appx678, lines 60-61, 69-73; Appx679, lines 90-92, 114-116.

**C. The Board's and Examiner's Findings**

The Board affirmed the Examiner's obviousness rejection of all pending claims. Appx1-13. In affirming, the Board found claim 1 to be representative of the claimed subject matter. Appx3.

The Examiner found that Coleman discloses all the structural limitations of claim 1 including a container having a side wall, bottom wall, storage area, tool portion, and a plurality of spaced projections. Appx383-384. To the extent that Coleman doesn't expressly teach that the tool portion is integrally formed in the

bottom wall, the Examiner relied on Loden for that teaching. Appx384. Regarding the limitation requiring that the sidewall is "configured to be readily deformable" to reduce the volume of the storage area and allow exit of the food product, the Examiner relied on disclosures of Willemsen and Shin. Appx384-385. Finally, with respect to the limitation requiring that the plurality of spaced projections is "configured for use in breaking up and/or tenderizing the food product," the Examiner found that Coleman's disclosed projections are capable of performing that function. Appx383-385; Appx463-465.

In affirming the Examiner's findings, the Board found that Coleman's packaged food product is capable of performing each of the functions specified in the "configured to" limitations. Appx6-7. Relevant to this appeal, the Board agreed with the Examiner that Coleman's plurality of spaced projections are capable of "breaking up and/or tenderizing the food product," and thus satisfy that limitation. Appx7; Appx436-437. Further, the Board and the Examiner found that Coleman's irregularities would have been capable of performing the "breaking up and/or tenderizing" function because Coleman's irregularities are structurally equivalent to Blue Buffalo's projections. Appx7; Appx383-385; Appx389-390; Appx392; Appx436-437; Appx463-465.

Rejecting Blue Buffalo's arguments, the Board found that Blue Buffalo failed to show that the claimed "breaking up and/or tenderizing" function patentably

distinguished Blue Buffalo's claimed projections from Coleman's irregularities. Appx7. In particular, the Board was not persuaded by Blue Buffalo's argument (citing Appx451) that there is no evidence that Coleman's irregularities are capable of "breaking up and/or tenderizing the food product." *Id*. The Board agreed with the Examiner's finding that Coleman teaches that the base of its bowl is formed with irregularities in the form of pyramids or relatively sharp concentric circles. *Id*.; *see also* Appx378-379, Appx390; Appx392; Appx436; Appx464; Appx697, ¶ [0016]. And the Board agreed with the Examiner that Coleman's irregularities are similar in shape to the projections described in Blue Buffalo's specification. Appx7 (citing Appx464, citing Appx31-32, ¶ 20). Further, the Board found that Coleman's irregularities would have some degree of rigidity, based on Coleman's teachings that the irregularities are designed to engage with the surface the bowl rests on to resist sliding and overturning. *Id*. (citing Appx697, ¶ [0016]). Therefore, the Board concluded that, in addition to preventing sliding and overturning of the container, there was reasonable basis to conclude that Coleman's irregularities would have been capable of being used for breaking up and/or tenderizing a food product. Appx7. Thus, the Board sustained the Examiner's rejection of claim 1. *Id*.

The Board designated its affirmation as a new ground of rejection, as the Board considered facts and reasoning not raised by the Examiner. *Id*. (citing *In re Leithem*, 661 F.3d 1316, 1319 (Fed. Cir. 2011)).

### D. The Board's Decision on Rehearing

The Board granted Blue Buffalo's request for rehearing to the extent that the Decision was considered in light of Blue Buffalo's arguments. Appx15. However, the request was otherwise denied and the Decision was not modified in any respect. Appx15-16; *see also* Appx20.

In its request for rehearing, Blue Buffalo asserted that the Board erred by equating the claim 1's "configured to" language with the phrase "capable of." Appx505.[6] Blue Buffalo argued that by so doing the Board acted contrary to the Federal Circuit's authority, which distinguishes between "configured to" and "capable of" claim language. *Id.* (citing *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335 (Fed. Cir. 2012)); Appx506-509. Blue Buffalo further argued that the "configured to" language in the claim is a structural limitation and, thus, Coleman's structure must be actually designed for, not merely "capable of" performing the claimed "breaking up and/or tenderizing" function. Appx508-509.

The Board was not persuaded by Blue Buffalo's arguments. Appx16-19. The Board found that Blue Buffalo's specification discloses projections (projections 375)

---

[6] Blue Buffalo referred to the language as "'configured to' type language." *See* Appx505-507. In its Decision on Rehearing, the Board similarly used the phrase "configured to," seemingly echoing Blue Buffalo's use of the phrase. *See* Appx16-19. In fact, claim 1 uses the phrase "configured for," not "configured to," *see* Appx25, but that difference does not impact the analysis here.

that are preferably pyramidal in shape so as to generally come to a sharp or rounded point and can be manually pressed into a food product to break up and/or tenderize the food product. Appx17 (citing Appx31-32, ¶ 20). Based on Blue Buffalo's specification and figures, the Board interpreted the "for use in in breaking up and/or tenderizing the food product" language in claim 1 to be functional language that did not patentably distinguish the structures recited in the claim (projections 375) from those found in Coleman (irregularities 21). *Id.*

The Board further found that Figure 2 of Coleman teaches a container having a sidewall and bottom wall that defines a storage area 2, where the bottom wall has integrally formed irregularities. Appx17 (citing Appx697, ¶ [0013], Appx695 (Fig. 2)). The Board explained that Coleman need not explicitly teach that its irregularities perform the functions recited in claim 1 as long as Coleman teaches a structure that is capable of performing the claimed function. Appx18 (citing *In re Schreiber*, 128 F.3d 1473, 1477 (Fed. Cir. 1997) (explaining that where there is reason to conclude that the structure of the prior art is inherently capable of performing the claimed function, the burden shifts to the applicant to show that the claimed function patentably distinguishes the claimed structure from the prior art structure)). The Board reiterated that because Coleman's irregularities are found to be in the form of pyramids or relatively sharp concentric circles, there was a reasonable basis to conclude that they are configured to, and are thus inherently capable of, "breaking

up and/or tenderizing the food product after the food product is removed from the storage area." Appx18-19 (citing Appx25 (Claim 1), Appx697, ¶ [0016], Appx695 (Fig. 2)). Thus, the Board found that like the reference at issue in *Schreiber,* Coleman's irregularities satisfied the "configured for" limitation of claim 1. Appx18-19.

Moreover, in light of *Schreiber*, the Board found that Blue Buffalo did not present persuasive arguments or sufficient evidence that Coleman's container was not capable of performing the "breaking up and/or tenderizing" function. Appx19. The Board noted that, contrary to Blue Buffalo's argument, "there is no per se rule that requires 'configured to' to impart the mental step of designing the structure for the express function recited." *Id*. The Board explained that "[i]t has long been held that 'apparatus claims cover what a device *is*, not what a device *does.*'" *Id*. (emphasis in original) (citing *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1468 (Fed. Cir. 1990)). The Board further explained that "[a]t the end of the day, one must bear in mind that interpreting non-functional claim terms in a way that makes infringement or validity turn on their function is improper." Appx19 (citing *Paragon Solutions, LLC v. Timex Corp.*, 566 F.3d 1075, 1091 (Fed. Cir. 2009)). The Board found that "[m]ore is required to overcome the presumption that the structure is the same or obvious from Coleman's structure." Appx19.

## III. SUMMARY OF THE ARGUMENT

Substantial evidence supports the Board's findings that representative claim 1 would have been obvious over the combination of Coleman with three additional prior art references. As the Board found, Coleman teaches nearly all the limitations of claim 1, including the tool portion with a plurality of spaced projections by its disclosure of irregularities. Blue Buffalo only challenges the Board's findings that Coleman's irregularities satisfy the "configured for use in breaking up and/ or tenderizing the food product after the food product is removed from the storage area" limitation. The Board correctly found that they do.

As the Board found, Blue Buffalo claimed its projections functionally and Coleman's irregularities are structurally equivalent to Blue Buffalo's claimed projections. The Board thus established a presumption that Coleman's irregularities are inherently capable of performing the claimed function, and the burden shifted to Blue Buffalo to prove that Coleman's irregularities could not perform the claimed function. Blue Buffalo failed to meet that burden.

Blue Buffalo argues that the Board erred by interpreting the "configured for" limitation as merely requiring a structure that is "capable of" performing the claimed function, rather than one specifically designed for the function. This argument is flawed because claim 1 recites "configured for." By reciting "configured for," Blue Buffalo opted to claim its projections based on their function rather than structure,

and Blue Buffalo fails to structurally distinguish its projections from Coleman's disclosed irregularities. Therefore, the Board correctly found that Coleman's irregularities satisfy the claim limitation.

To attempt to support its "specifically designed for" argument, Blue Buffalo relies on *Aspex Eyewear* and *In re Giannelli* cases. But in each of those cases, the court interpreted the phrase "adapted to," not "configured for," and arrived at a narrow construction based on the claim language and structures disclosed in the specification. Here, there is nothing in the claims or specification to mandate a narrower construction of the "configured to" limitation.

Finally, Blue Buffalo wrongly asserts that the Board's reliance on *In re Schreiber* was improper because Coleman's irregularities serve a different purpose than Blue Buffalo's projections. The Board relied on *Schreiber* for the premise that when a claim uses functional language and the claimed and prior art structures are equivalent, the burden shifts to the inventor to prove the prior art structure cannot inherently perform the claimed function. Moreover, *Schreiber* establishes that if a prior art structure is inherently capable of performing the claimed function, that capability is sufficient to meet the claim, regardless of the prior art's intended purpose. Thus, the Board's reliance on *Schreiber* was appropriate.

## IV. ARGUMENT

### A. Standard of Review

Blue Buffalo has the burden to show that the Board committed reversible error. *In re Watts*, 354 F.3d 1362, 1369 (Fed. Cir. 2004). Obviousness is a question of law based on underlying findings of fact. *In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000). “The determination of what a reference teaches is one of fact, as is the existence of a reason for a person of ordinary skill to combine references.” *In re Constr. Equip. Co.*, 665 F.3d 1254, 1255 (Fed. Cir. 2011). This Court reviews the Board’s legal conclusion of obviousness *de novo*, but must uphold the Board’s fact findings if they are supported by substantial evidence. *Gartside*, 203 F.3d at 1316.

Substantial evidence is “such relevant evidence as a reasonable mind might accept as adequate to support” the conclusion reached. *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). It is “something less than the weight of the evidence but more than a mere scintilla of evidence.” *In re Mouttet*, 686 F.3d 1322, 1331 (Fed. Cir. 2012). For example, “where two different, inconsistent conclusions may reasonably be drawn from the evidence in record, an agency’s decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence.” *In re Jolley*, 308 F.3d 1317, 1329 (Fed. Cir. 2002).

### B. Substantial Evidence Supports the Board's Findings That The Claimed Invention Would Have Been Obvious

Under 35 U.S.C. § 103, "[a] patent . . . may not be obtained . . . if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious . . . to a person having ordinary skill in the art to which the claimed invention pertains." As the Supreme Court has instructed, the obviousness analysis considers the teachings of the prior art as a whole in view of the common sense and creativity of the person of ordinary skill in the art. *KSR Intern. Co. v. Teleflex*, 550 U.S. 398, 419-421 (2007).

Applying these principles, the Board rightly affirmed the Examiner's rejection of representative claim 1 as obvious based on the combination of Coleman with three additional prior art references—Loden, Willemsen, and Shin—with certain modifications. *See* Appx1-21. The Examiner found that Coleman teaches all of the structural limitations of the claim and that to the extent that it doesn't teach a tool portion that is integrally formed, Loden teaches that limitation and it would have been obvious to modify Coleman to include that feature. Appx383-384. While the Examiner relied on Willemsen and Shin for the limitation requiring the sidewall to be "configured to be readily deformable," Appx384-385, the Board found the sidewall in Coleman's disclosed packaged food product was capable of performing that function, thereby meeting the limitation without having to rely on Willemsen and Shin, Appx6. Similarly, with respect to the limitation requiring the plurality of

spaced projections to be "configured for use in breaking up and/or tenderizing the food product," the Board agreed with the Examiner that the irregularities in Coleman's disclosed food product would be capable of performing the function, thereby meeting the limitation. Appx7; Appx17-19; Appx383-385; Appx389-390; Appx392; Appx436-437; Appx463-465.

Before this Court, Blue Buffalo challenges only that last finding. Specifically, Blue Buffalo disputes that Coleman satisfied the "configured for" limitation in the wherein clause, "wherein the tool portion includes a plurality of spaced projections configured for use in breaking up and/or tenderizing the food product after the food product is removed from the storage area." Br. at 13-20. The Board, however, correctly found that Coleman teaches this limitation through its disclosure of structures referred to as "irregularities," which would be capable of performing the recited function. Appx7; Appx17-19.

#### 1. The Food Container of Claim 1 Is Indistinguishable from Coleman's Food Container Based on the Recited Structural Features

As the Board found, claim 1 is an apparatus claim. Appx6; Appx19; *see also* Appx25 (Claim 1). It has long been held that "apparatus claims cover what a device is, not what a device does." *Hewlett-Packard,* 909 F.2d at 1468; *In re Michlin,* 256 F.2d 317, 320 (C.C.P.A. 1958) ("It is well settled that patentability of apparatus claims must depend upon structural limitations and not upon statements of

function."). Here, Blue Buffalo's claim 1 recites "a plurality of spaced projections" without specifying any unique structural features for the projections. *See* Appx25 (Claim 1). The Board rightly identified the phrase "configured for use in breaking up and/or tenderizing the food product" as functional language that does not distinguish the structure of Blue Buffalo's claimed food container from Coleman's. Appx16-19. Functional language describes what something does rather than what it is. *In re Swinehart*, 439 F.2d 210, 212 (C.C.P.A. 1971). And it is improper to interpret a non-functional term like "projections" in a way that hinges validity on its function. *Paragon Solutions,* 566 F.3d at 1091. Apparatus claims, like Blue Buffalo's, must differentiate themselves from the prior art through structural features. *See In re Danly,* 263 F.2d 844, 848 (C.C.P.A. 1959) ("Claims drawn to an apparatus must distinguish from the prior art in terms of structure rather than function."); *In re Gardiner,* 171 F.2d 313, 315-16 (C.C.P.A. 1948) ("It is trite to state that the patentability of apparatus claims must be shown in the structure claimed and not merely upon a use, function, or result thereof."). Blue Buffalo's claim 1 fails to do so.

### 2. Substantial Evidence Supports the Board's Finding that Coleman's Irregularities Are Functionally Equivalent to Blue Buffalo's Claimed Projections

The Board correctly found no structural differences between Blue Buffalo's claimed projections and Coleman's irregularities. Appx7; Appx16-19. Coleman's

Figures 2 and 3 disclose a container having a sidewall and bottom wall that defines a storage area 2, where the bottom wall has integrally formed irregularities 21. Appx695 (Figs. 2 and 3); Appx697, ¶¶ [0013], [0016]. The irregularities "can be in the form of pyramids" or "relatively sharp concentric circles." *See* Appx697, ¶ [0016]. In addition, the Board rightly concluded that Coleman's irregularities would have some degree of rigidity as they are designed to engage with the surface beneath the container to resist sliding and overturning. Appx7 (citing Appx697, ¶ [0016]); Appx18-19. As a result, the Board properly found that Coleman's irregularities are similar in shape to the projections described in Blue Buffalo's specification which discloses a plurality of adjacently arranged projections 375 that are "pyramidal" and "come to a sharp" or "rounded point." Appx7; Appx31-32, ¶ 20.

Reproduced below is a side-by-side comparison of Blue Buffalo's Figure 4 (left) and Coleman's Figure 3 (right). As can be seen, Blue Buffalo's projections 375 and Coleman's irregularities 21 are structurally very similar.

FIG. 4







FIG. 3

Appx38 (Fig. 4, rotated); Appx695 (Fig. 3).

Choosing to define an element functionally, i.e., by what it does, carries with it a risk. *Schreiber,* 128 F.3d at 1478. When such language is used, and a prior art apparatus has the same structure as a claimed apparatus, a presumption arises that the prior art apparatus will inherently perform the functions of the claimed apparatus. *See Id.; see also In re Mousa*, 479 Fed.Appx. 348, 353 (Fed. Cir. 2012). The burden then shifts to the applicant to show that the prior art apparatus cannot function in the same manner as the claimed apparatus. *In re King*, 801 F.2d 1324, 1327 (Fed. Cir. 1986); *Schreiber*, 128 F.3d at 1477–78; *In re Swinehart*, 439 F.2d at 213; *In re Best*, 562 F.2d 1252, 1255 (C.C.P.A. 1977). Here, the Board properly found that Blue Buffalo failed to meet that burden. Appx19 ("Appellant does not persuasively argue or direct us to sufficient evidence that Coleman's container is not capable of performing the functionally defined limitations.").

Blue Buffalo argues that Coleman's irregularities are made from rubber, rendering them non-rigid and incapable of breaking up or tenderizing food products. Br. at 18-19. Blue Buffalo further contends that the Board improperly speculated that Coleman's irregularities are rigid without substantiating that claim. *Id.* The Board did no such thing. Rather, the Board found that Coleman's irregularities would have some degree of rigidity, based on Coleman's teachings that the irregularities are designed to engage with the surface the bowl rests on to resist

sliding and overturning. Appx7 (citing Appx697, ¶ [0016]). Blue Buffalo's assertion that Coleman's irregularities are made from rubber is in fact speculative. Br. at 18-19. Coleman does not disclose the material of its irregularities and, contrary to Blue Buffalo's argument, does not describe them as "soft and flexible" such that they would necessarily be rubber. Blue Buffalo's argument effectively asks this Court to reweigh the evidence, which is inappropriate on appeal. *In re Bayer Aktiengesellschaft*, 488 F.3d 960, 970 (Fed. Cir. 2007) ("Where two different conclusions may be warranted based on the evidence of record, the Board's decision to favor one conclusion over the other is the type of decision that must be sustained by this court as supported by substantial evidence.").

In sum, substantial evidence supports the Board findings that the phrase "configured for use in breaking up and/or tenderizing the food product" is a functional limitation, Coleman's irregularities and Blue Buffalo's projections are structurally equivalent, and Blue Buffalo failed to prove that Coleman's irregularities were not capable of performing the claimed function. Therefore, the Board rightly found that Blue Buffalo's claimed invention is obvious.

### C. Blue Buffalo Fails to Establish Reversible Error in the Board's Obviousness Determination

Blue Buffalo argues that the Board erred in finding claim 1 unpatentable as obvious because the "configured for" limitation in claim 1 requires a structure that is "specifically designed" to perform the "breaking up and/or tenderizing" function.

*See* Br. at 13-20. Blue Buffalo argues that it is not enough that a prior art structure be "capable of" performing the claimed function. *See Id.* To attempt to support its argument, Blue Buffalo relies on *Aspex,* 672 F.3d at 1349 and *In re Giannelli*, 739 F.3d 1375, 1379 (Fed. Cir. 2014). Br. at 14-16. However, Blue Buffalo's reliance on these cases is misplaced.

*Aspex* pertained to construction of the term "adapted to," not "configured for." *See Aspex*, 672 F.3d at 1349. With respect to that term, the Federal Circuit held, "[i]n common parlance, the phrase 'adapted to' is frequently used to mean 'made to,' 'designed to,' or 'configured to,' but it can also be used in a broader sense to mean 'capable of' or 'suitable for.'" *Id*. On the facts of the case, the court interpreted "adapted to" narrowly based on the specific claim language and disclosures in the specification. *Id*. Thus, the *Aspex* court's claim interpretation was specific to the claim term at issue in that case, and, contrary to Blue Buffalo's arguments, does not impart any controlling legal interpretation to the claim term "configured for." Blue Buffalo does not explain why this Court should apply a narrow meaning of the term "configured for" in this case. Neither the claim language nor the specification of Blue Buffalo's application support such a reading, as was true in *Aspex*.

Similarly, the phrase at issue in *Giannelli* was not "configured for," but rather "adapted to." *See Giannelli*, 739 F.3d at 1379. Like *Aspex*, the *Giannelli* court analyzed what "adapted to" meant in the context of the claim term at issue. *Id*. Based

on the written description of the application, the *Giannelli* court determined that the term "adapted to" has a narrower meaning than "capable of." *Id*. Here, in contrast, there is nothing in the claim language or specification that mandates a narrower interpretation of the "configured to" phrase. All that is required is sufficient rigidity of the projections to be able to break up or tenderize the food product. Coleman's irregularities are fully capable of performing that function. Therefore, like with *Aspex*, Blue Buffalo's arguments pertaining to *Giannelli* are misplaced.

It is immaterial that Coleman's irregularities are designed to engage with the ground to resist having the pet food package slide and overturn. *See* Br. at 17–19. That the purpose Coleman discloses for its irregularities may be somewhat different than the purpose of Blue Buffalo's claimed projections does not establish that the structures are patentably different. *See In re Danly*, 263 F.2d at 848; *In re Gardiner*, 171 F.2d at 315-16. Similarly, there is no requirement that the function of the claimed apparatus be "inevitable" in Coleman. *See* Br. at 21. Blue Buffalo cites to *In Re Robertson* 169 F.3d 743 (Fed. Cir. 1999) and *In Re Oelrich,* 666 F.2d 578 (C.C.P.A. 1981) to suggest otherwise. *Id.* Setting aside that Blue Buffalo does not explain its reasoning concerning these cases, the cited cases are inapplicable. Both involve anticipation by inherency and the principle that inherency may not be established by probabilities. *Robertson* 169 F.3d at 745; *Oelrich,* 666 F.2d at 581. Neither presented a situation, like here, where the allegedly missing claim element

is drafted in functional terms and the disclosed structure that performs the claimed function is structurally similar to a prior art structure.

As the Board found, Coleman need not explicitly teach that its irregularities perform the function recited in claim 1 as long as Coleman teaches a structure that is capable of performing the claimed function. Appx18 (citing *Schreiber*, 128 F.3d at 1477). Similarly, it is irrelevant that Coleman's product is meant for consumption directly out of the pet food package. *See* Br. at 17–20 (arguing that because Coleman teaches that its food stays in the package, Coleman's irregularities are not specifically designed to breakup or tenderize food after it is removed from the package). Coleman is not required to disclose the same function as the claimed apparatus. Appx18. It just has to disclose a structure that is *capable of* performing the same function. *Id.*

Blue Buffalo also argues that the Board's reliance on *In re Schreiber* is misplaced because, according to Blue Buffalo, unlike here, the prior art in *Schreiber* "could be used for the same purpose as the claimed purpose and there was no dispute that the structural limitations in the claims were also present in the prior art cited by the Board." Br. at 20-21. However, Blue Buffalo's argument misses the mark. First, the Board relied on *Schreiber* for the proposition that when a claim uses functional language to define a structure, and the claimed structure and prior art structure are structurally equivalent, the United States Patent and Trademark Office can shift the

burden to the inventor to prove that the prior art structure does not possess the claimed functional capability. *Schreiber*, 128 F.3d at 1478. Second, *Schreiber* emphasized that a prior art structure's capability to perform a function is more important than its stated purpose. *Id.* at 1477. And this aligns with the Board's focus on whether Coleman's irregularities are capable of performing the "breaking up and/or tenderizing" function, regardless of Coleman's stated purpose. The Board correctly concluded that Coleman is not required to explicitly disclose that its irregularities perform the function stated in claim 1, as long as Coleman's irregularities are *capable of* carrying out the claimed function. Appx18 (citing *Schreiber*, 128 F.3d at 1477).

## V. CONCLUSION

Because substantial evidence supports the Board's underlying factual findings and its conclusion that representative claim 1 would have been obvious over the prior art is correct as a matter of law, this Court should affirm.

Respectfully submitted,

September 27, 2024

/s/ Monica B. Lateef
FARHEENA Y. RASHEED
*Solicitor*

AMY J. NELSON
*Senior Counsel for Patent Policy and Litigation*

MONICA B. LATEEF
SHEHLA WYNNE
*Associate Solicitors*

Office of the Solicitor
U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313
(571) 272-9035

*Attorneys for the Director of the United States Patent and Trademark Office*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the type-volume limitation in Fed. Cir. R. 32(b). The total number of words in the foregoing brief, excluding table of contents and table of authorities, is 5,462, as calculated by Microsoft Word® software program.

/s/ Monica B. Lateef
MONICA B. LATEEF
*Associate Solicitor*
United States Patent & Trademark Office
Mail Stop 8
P.O. Box 1450
Alexandria, Virginia 22313-1450