**Docket No. 2024-1611**

*In the*

# United States Court of Appeals

*For the*

# Federal Circuit

IN RE: BLUE BUFFALO ENTERPRISES, INC.,

*Appellant.*

*On Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 17/136,152.*

## REPLY BRIEF OF APPELLANT BLUE BUFFALO INC.

EVERETT G. DIEDERIKS, JR.
NICHOLAS WHITELAW
DIEDERIKS & WHITELAW, PLC
4196 Merchant Plaza, #815
Woodbridge VA 22192
703-583-8300 (Telephone)
ediederiks@dwpatentlaw.com
nwhitelaw@dwpatentlaw.com
*Attorneys for Appellant, Blue Buffalo Enterprises, Inc.*

COUNSEL PRESS · (213) 680-2300 PRINTED ON RECYCLED PAPER

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT
## CERTIFICATE OF INTEREST

**Case Number** 2024-1611

**Short Case Caption** In re: Blue Buffalo Enterprises Inc.

**Filing Party/Entity** Appellant, Blue Buffalo Enterprises Inc.

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 10/17/24 Signature: /s/ Nicholas Whitelaw

Name: Nicholas Whitelaw

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br>☐ None/Not Applicable |
| Blue Buffalo Enterprises, Inc. | | General Mills, Inc. (parent company of Blue Buffalo Enterprises, Inc.) |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Diederiks & Whitelaw, PLC | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☑ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ........................................................................ i
TABLE OF AUTHORITIES ........................................................................ ii
I. INTRODUCTION ........................................................................ 1
II. BRIEF SUMMARY OF ARGUMENTS ........................................................................ 2
III. DETAILED ARGUMENTS ........................................................................ 5
A. Misapplied Case Law ........................................................................ 5
B. No Prima Facie Case of Obviousness ........................................................................ 9
C. Improper Shifting of Burden of Proof ........................................................................ 12
IV. Conclusion ........................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.,*
672 F.3d 1335 (Fed. Cir. 2012) ....................................................................2, 6

*In re Best*,
562 F.2d 1252 (C.C.P.A. 1977) ....................................................................13

*In re Giannelli*,
739 F.3d 1375 (Fed. Cir. 2014) ....................................................................6

*In re King*,
801 F.2d 1324 (Fed. Cir.1986) ....................................................................13

*In re Man Mach. Interface Techs. LLC,*
822 F.3d 1282 (Fed. Cir. 2016) ....................................................................6

*In re Schreiber,*
128 F.3d 1473 (Fed. Cir.1997) ...................................................2, 8, 9, 13

*In re Swinehart*,
439 F.2d 210 ....................................................................................13

*In re Wright*,
848 F.2d 1216, 6 USPQ2d 1959 (Fed. Cir. 1988) ..............................................9

*Rex Med., L.P. v. Intuitive Surgical, Inc.*,
No. CV 19-005 (MN), 2020 WL 2128795 (D. Del. May 5, 2020) ........................6

*Salazar v. HTC Corp.*,
No. 216CV01096JRGRSP, 2018 WL 4242416 (E.D. Tex. May 1, 2018).............6

*Wapp Tech Ltd. P'ship v. Seattle Spinco, Inc.,*
No. 4:18-CV-469, 2020 WL 1983087 (E.D. Tex. Apr. 27, 2020) .........................6

# I. INTRODUCTION

The Appellee, the Director of the United States Patent and Trademark Office, hereinafter the "USPTO", would mistakenly have the Court believe that this appeal concerns only a single issue: "The sole issue on appeal is whether substantial evidence supports the Board's finding that Coleman satisfies the 'configured for use in breaking up and/or tenderizing the food product' limitation." (See the Appellee's brief, hereinafter, PTO Br., at page 2.) As detailed further below, what is true is the USPTO clearly circumvented or glossed over various issues, ignored CAFC precedent in making their decision, failed to prove a prima facie case of obviousness, particularly by failing to address the actual limitations of the claims, and looked to improperly shift the burden of proof to the Applicant for patent.

In connection with identifying the "sole" issue on appeal, the USPTO copied claim 1 from the '152 application as set forth below, italicizing only the last section as being of interest to this appeal.

1. A packaged food product comprising:

a container including at least one sidewall and a bottom wall which combine to define a storage area, said bottom wall having an integrally formed, tool portion; and a food product retained within the storage area and in contact with the at least one sidewall, wherein the at least one sidewall is configured to be readily

deformable by a hand of a user to reduce a volume of the storage area, and the packaged food product is configured such that reducing the volume of the storage area causes the food product to exit the storage area for further processing with the tool portion, *wherein the tool portion includes a plurality of spaced projections configured for use in breaking up and/ or tenderizing the food product after the food product is removed from the storage area.* PTO Br. 6.

However, as should be fully evident from the discussions below, there are a host of issues on appeal, any one of which justifies a reversal in this case.

## II. BRIEF SUMMARY OF ARGUMENTS

The CAFC has previously made clear that "configured to" and "designed to" present different claim scopes than "capable of" and "adapted to." From this appeal, it appears clear that the USPTO does not agree and, with specific reliance on a rejection based on a holding of the prior art only being "capable of" meeting the claimed limitations, rejects the actual "configured to" claim language. In the Brief for the USPTO, the USPTO would have the ruling in *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc., 672 F.3d 1335 (Fed. Cir. 2012)* ignored in favor of *In re Schreiber,128 F.3d 1473 (Fed. Cir.1997)*, basically on the grounds that the claims in *Aspex* recited "adapted to" language so the Court ruling distinguishing "configured to" vs. "adapted to" is not relevant, while at the same time ignoring that the claims in *Schreiber* had neither of these phrases and the arguments on

appeal centered around "capable of" language. See PTO Br. 21-25. In any event, as will be brought out further below, the present claim language sets forth structural features of the invention which enable specified functions to be performed, with neither the structure nor function being proven to exist in the prior art.

A reversal in this appeal can stand alone based on the general failure to set forth a prima facie case of obviousness. As indicated above, the Appellee would like to guide this decision based on one issue and one claim limitation, but the prior art rejection relies on a 4-way combination of references to meet the broadest claims, Appx383. For reasons detailed below, it is submitted that modifying Coleman in the manner set forth in the Final Rejection would destroy the reference, not letting the invention set forth therein to be use for its intended purpose. Also, it is admitted by the USPTO that Coleman does not disclose a food container having a sidewall which is readily deformable by hand to reduce the volume of a storage area thereof to cause food product to exit the storage area for further processing with the tool portion integral with a bottom wall of the container, Appx384. Instead, the rejection further relies on Willemsen and Shin to teach readily deformable walls, Appx384. While it is true that these two references have readily deformable walls, Willemsen is a measuring/metering container including an accordion-type sidewall which can be adjusted depending on a desired

metering volume in the container, Appx700. The sidewall is adjusted by pushing on the bottom, not providing for deforming the sidewall by hand to reject food for further processing, Appx707. Shin is concerned with making a plastic container which can be crushed at the time of disposal, Appx677. Of course, when applying the teachings of prior art references in making a proper obviousness-type rejection, the teachings should be considered as a whole. This leads to questioning why one of ordinary skill in the art would look to modify Coleman to provide a sidewall which is readily deformable by hand to dispense food based on either of Willemsen or Shin when neither of the containers disclosed in these patents disclose any corresponding feature? Further claims are rejected as "obvious" by adding fifth and sixth referenced to this overall combination, Appx385-388.

The USPTO best summarized their position on burden shifting in stating their position "establishes a presumption that Coleman's irregularities are inherently capable of performing the function of Blue Buffalo's claimed projections. The Board found that, under applicable law, the burden shifts to blue Buffalo to prove that Coleman's irregularities cannot function in the same manner as Blue Buffalo's projections." (PTO Br. 7.) Instead of presenting prior art which is actually structured (configured) to perform a specified function, without evidence, the USPTO seems to believe appropriate to hold the prior art to meet a lower scope of "capable of" and then just shift the burden to the Applicant for

patent. However, the USPTO has not established a prima facie case such that burden shifting is improper. All parties agree Coleman has absolutely no disclosure regarding either removing food from its container by reducing the volume of the container by readily deforming a container sidewall by hand prior to consumption or using an integrated tool on the container to break-up or tenderize the food after removal but yet, upon making up the hypothetical situation where one would go against the teachings in Coleman and actually remove the food from the container specified to be eaten from, then the food could be broken up or tenderized, so the Appellant must now prove this hypothetical impossible. PTO Br. 21, 26. For reasons which will be detailed below, this hypothetical would not occur in connection with using the Coleman invention but, regardless and contrary to the unsubstantiated conclusion by the Appellee, this is not a proper shifting of the burden of proof.

## III. DETAILED ARGUMENTS

### A. Misapplied Case Law

The rejection in this case, per the USPTO, is based on “configured to” claim language only encompassing an intended use such that, if the prior art is proven to be capable of performing the intended use, then the claim limitations are met. Appellant strongly disagrees. When the phrase "adapted to" means "configured to" and not "capable of," the phrase is "most naturally understood to mean. . . designed

or configured to *accomplish the specified objective,* not simply that they can be made to serve that purpose." *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.,* 672 F.3d 1335, 1349 (Fed. Cir. 2012) (emphasis added). This decision has been referenced and relied upon in various other decisions, such as in stating: "In *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335 (Fed. Cir. 2012), this Court specifically held, in part, '**Configured to**' in claims **requires** a structure that is **more than just capable of** performing a function but is actually made to perform the function" (emphasis added). *In re Man Mach. Interface Techs. LLC,* 822 F.3d 1282, 1286 (Fed. Cir. 2016) (quoting *In re Giannelli*, 739 F.3d 1375, 1379 (Fed. Cir. 2014)). Thus, the phrases "adapted to" and "configured to" can be, but are not always, synonymous. Regardless, it is clear that "configured to" is more narrow than "capable of." More specifically, the CAFC has emphasized that "configured to" should be accorded a narrower interpretation requires proof that something is made to accomplish a specific objective. *See Wapp Tech Ltd. P'ship v. Seattle Spinco, Inc., No. 4:18-CV-469, 2020 WL 1983087, at *20 (E.D. Tex. Apr. 27, 2020)* (specifically noting that the phrase "configured to" has a "narrower meaning than merely `capable of' or `suitable for' under Federal Circuit law"). *See, e.g., Rex Med., L.P. v. Intuitive Surgical, Inc.,* No. CV 19-005 (MN), 2020 WL 2128795, at *5 (D. Del. May 5, 2020) ("Configure, as defined by dictionaries, means set up for operation especially in a particular way."); *Salazar v. HTC Corp.*,

No. 216CV01096JRGRSP, 2018 WL 4242416, at *2 (E.D. Tex. May 1, 2018) (construing the term "configured to" to "require some particularized arrangement of the memory device for a specific purpose"). In the Appeal Brief filed with the PTAB in this matter, the Appellant listed a host of Board decisions following this law, but to no avail with the USPTO, Appx448.

In this case, the USPTO ignored this series of caselaw as the claims in the Final Rejection were specifically rejected based only on statements relying a holding that the prior art is “capable of” meeting the limitations. In fact, the USPTO has gone so far as to specifically state that the “configured for use in breaking up and/or tenderizing the food product” limitation is just a functional limitation (PTO Br. 14, 18), seemingly voiding the need to present prior art actually directed to the invention.

In connection with the interpretation of the “configured to” limitations, again the only issue discussed by the Appellee is the “breaking up and/or tenderizing” limitation. However, as mentioned above, claim 1 further includes: “the at least one sidewall is configured to be readily deformable by a hand of a user to reduce a volume of the storage area, and the packaged food product is configured such that reducing the volume of the storage area causes the food product to exit the storage area for further processing with the tool portion.” The sidewall limitation is specifically mentioned in the Appellant’s Primary Brief, at least on page 13. Blue

Br. 13. Appellant noted the Board held the limitation of the sidewall being configured to be readily deformable was met by the prior art because "Coleman teaches that the sides and base of its food bowl are 'relatively thin' and 'relatively flexible'….Based on this flexibility, there is reasonable basis to conclude that Coleman's sidewalls are **capable of** being 'readily deformable by a hand of a user to reduce a volume of the storage area' of its food bowl" (emphasis added). Blue Br. 13. Here the USPTO takes several approaches, including holding that the limitation is met because the Coleman container can be flexible or based on the additional prior art of Willemsen and Shin which teach collapsible containers for use in dispensing metered fluids and enabling the crushing of a plastic container for compact disposal, respectively.

In their Appellee Brief, the USPTO goes further and denies the cited caselaw makes a distinction with "configured to" and actually deflects the argument that "configured to" is distinct from "capable of", which is really the only phrases of concern. Instead, the Appellee's Brief goes to great lengths to try and discuss "adapted to" language, even though this Court has used cases concerned with "adapted to" limitations in discussing the relative meaning of numerous employed phrases, including "configured to" as set forth above. PTO Br. 23, 24. In particular, the USPTO would have the court conclude that *In re Schreiber* should be controlling. PTO Br. 25, 26. That is, the USPTO attempts to knock down all

the caselaw relied upon by the Appellant because the claim language in the cases does not directly recite "configured to" (not conceded) but yet puts reliance on the anticipatory decision in *Schreiber* which lacks any "capable of" claim language. As discussed above, Appellant would agree the court has established a varying scale for the meaning of "adapted to" which may require a case-by-case analysis, but the other referenced phrases have been well defined for clarity in use by patent practitioners and patent examiners alike. Simply stated, "configured to" is more specific than "capable of"; the rejection specifically relies on "capable of" meeting "configured to"; and, if this USPTO decision is upheld, there will be new law.

## B. No Prima Facie Case of Obviousness

When determining obviousness, "the question is whether what the inventor did would have been obvious to one of ordinary skill in the art attempting to solve the problem upon which the inventor was working." *In re Wright*, 848 F.2d 1216, 6 USPQ2d 1959 (Fed. Cir. 1988). As set forth in the subject application, as filed, in the case of pet food such as wet cat or dog food, cans are a common packaging type. When the wet food is served, consumers frequently remove the food from the can and place it into or onto a bowl, dish or plate, for example, where the food may then be broken up or otherwise prepared for serving. This requires an additional utensil, such as a spoon or fork, both for serving and chopping. However, many consumers would prefer not to use a utensil they themselves eat

with for dispensing pet food, necessitating the ownership of one or more dedicated pet food utensils. At the very least, this process results in additional dirty utensils which must be cleaned. Accordingly, it would be desirable to provide a way for consumers to serve wet pet food without using a utensil (see paragraph 0002 of subject application as filed), Appx27 (¶ [0012]). The applied prior art does not recognize or make any attempt to solve the problem addressed by the present invention.

The USPTO has seemingly admitted Coleman has no disclosure on a food container having a sidewall which is readily deformable by hand to reduce the volume of a storage area thereof to cause food product to exit the storage area for further processing with a tool portion integral with a bottom wall of the container. Equally, the USPTO would also seemingly admit that neither Willemsen nor Shin discloses such a container, even a container constructed with a sidewall which is specifically deformable by hand to cause food to be dispensed therefrom. Appx384. With this in mind, the question is why modify Coleman as proposed to achieve what the inventors were working on and accomplished? In addition, as all words in a claim have some meaning, how can all the limitations be met by combining three references, none of which has either of the two main features claimed?

As mentioned above, Coleman discloses a container assembly which includes two bowls (see embodiment of Figure 2), Appx695 (Fig. 2), received in a common support structure. The container assembly is designed to feed pets both water from one bowl and dry or moist food directly from the other bowl when in a hurry or on the road. The arrangement is designed so that, by simply pulling back on tab 31, removable lids 3 are separated from the respective bowls, thereby enabling fast feeding (paragraph 0014) Appx697 (¶ [0014]). The irregularities on the base of the bowls are provided to "engage with the ground, grass, concrete, etc…" (paragraph 0016), Appx697 (¶ [0016]). Initially, it is submitted that even attempting to arrive at the present invention would destroy Coleman. In Coleman, the food is meant to be eaten directly out of the bowl, Appx697, such that one of ordinary skill in the art would not look to modify Coleman to enable the sidewall to be readily deformed to dispense the food out of the container. In addition, one would not look to further take the time to tenderize the food as it would slow the overall feeding process. Furthermore, realizing that the bowls of Coleman would seemingly be outside (upon the ground, grass, concrete), one would not look to dispense the food onto these surfaces, let alone grind the food into any of these surfaces to break-up or tenderize the food.

Even attempting to consider Coleman in view of the other cited prior art, Willemsen is a measuring/metering container including an accordion-type sidewall

which can be adjusted depending on a desired metering volume for a **liquid material** in the container, Appx704. The sidewall is adjusted by pushing on the bottom, not deforming the sidewall by hand, and the container is used for metering a liquid material, not ejecting food for further processing. See, Appx707 (¶ 46). Shin is concerned with making a plastic container which can be crushed at the time of disposal. Appx677. Simply stated, one of ordinary skill in the art, absent hindsight, would not look to modify Coleman to include the missing claimed features and, even if so considered, would not find these missing features in either of Willemsen or Shin. These deficiencies cannot be circumvented by ignoring claim limitations and falling back on a generally universal "capable of" argument, particularly when the claim language of concern is not "capable of."

### C. Improper Shifting of Burden of Proof

The USPTO wants the green light on the authority to take prior art which is not concerned with various aspects of an invention, state the prior art is "capable of" meeting all the claim limitations and then mandate the Appellant to prove the negative. The USPTO argues that when applicant chooses "to define an element functionally …and a prior art apparatus has the same structure as a claimed apparatus, a presumption arises that the prior art apparatus will inherently perform the functions of the claimed apparatus…. The burden then shifts to the applicant to show that the prior art apparatus cannot function in the same manner as the

claimed apparatus." See PTO Br. 21. However, the Applicant employed the wording "configured to" and "configured for", which defines structure for a specified function, and the prior art apparatus does not have the same structure as the claimed apparatus for the reasons discussed above. With regard to the USPTO's reliance on *Schreiber*, 128 F.3d 1473 at 1478, and *In re King*, 801 F.2d 1324 at 1327 (Fed. Cir.1986), these cases are based on anticipation, which is not relevant to the subject obviousness-type rejection. The Board admits Coleman does not show all the claimed limitations. Appx384. As for *In re Swinehart*, 439 F.2d 210 at 213, the case covers an indefiniteness rejection and is hardly relevant to the burden of proof in this case other than it is cited to discuss how certain functional language should be interpreted in claims. *In re Best*, 562 F.2d 1252, 1255 (C.C.P.A. 1977) does address an obviousness-type rejection, but in that case the prior art did show "All the positive process limitations are expressly disclosed except for the functionally expressed rate of cooling." That is simply not the case here, where the claimed structure is not present in the prior art.

In this case, instead of presenting prior art which is actually structured (configured) to perform a specified function, without evidence the USPTO held the prior art met a lower scope of "capable of" and then just shifted the burden to the Applicant. As the USPTO did not actually meet the claim limitations for a proper prima facie case of obviousness, i.e., "capable of" structure is not, per se,

"configured to" structure, the burden could not be properly shifted. It is hard to fathom the USPTO need merely provide a conclusory statement that something is "capable of" performing a claimed function to shift the burden. Again, the container assembly of Coleman includes two bowls (see embodiment of Figure 2), Appx695 (Fig 2), in a common support structure. The container assembly is designed to feed pets both water from one bowl and dry or moist food directly from the other bowl when the pet owner is in a hurry or on the road. This is explicitly disclosed in Coleman (see paragraph 0014), Appx697 (¶ [0014]). The irregularities on the base of the bowls are provided to "engage with the ground, grass, concrete, etc…" (paragraph 0016), Appx697 (¶ [0016]). From this disclosure, the USPTO shifted the burden for the Applicant to prove that irregularities designed to engage the ground, grass or concrete would not be used to break-up or tenderize the referenced dry or moist food. On this point, the Applicant would not be able to prove impossibility, i.e., the negative, but can only point out the lack of any relevant teaching in Coleman. On this same note, it is envisioned the USPTO could just as easily have relied on a container with a brick bottom as a brick surface would have some undulations and could be capable of doing some serious meat tenderizing. Overall, it is submitted that some sense of reasonableness should prevail. In addition, at the very least, it is submitted that a

proper prima facie case of obviousness has not been establish, thereby making the shifting of the burden improper.

## IV. Conclusion

For at least the reasons stated, it is respectfully submitted that the Board's Decision is erroneous and should be reversed.

Dated: October 17, 2024

Respectfully submitted,

*/s/* Everett G. Diederiks, Jr.
Everett G. Diederiks, Jr.

*/s/* Nicholas Whitelaw
Nicholas Whitelaw
**Diederiks & Whitelaw, PLC**
**4196 Merchant Plaza, #815**
**Woodbridge, VA 22192**
**Tel: 703-583-8300**
ediederiks@dwpatentlaw.com
nwhitelaw@depatentlaw.com
*Counsels for Appellant,*
*Blue Buffalo Enterprises Inc.*

**CERTIFICATE OF FILING AND SERVICE**

I hereby certify that on this 17th day of October, 2024, I caused this Reply Brief of Appellant to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Monica B.
Lateef Amy J.
Nelson
Farheen Yasmeen Rasheed
Shehla Wynne
UNITED STATES PATENT AND TRADEMARK OFFICE
Post Office
Box1450
Mail Stop 8
Alexandria, Virginia 22313
(571) 272-9035
*Counsel for Appellee*

/s/ Everett G. Diederiks, Jr.
*Counsel for Appellant*

/s/ Nicholas Whitelaw
*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):
[ X ] this brief contains [*3,545*] words.

[ ] this brief uses a monospaced type and contains [*state the number of*] lines of text.

2. This brief complies with the typeface and type style requirements because:
[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 365*] in [*14pt Times New Roman*]; *or*

[ ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: October 17, 2024

/s/ Everett G. Diederiks, Jr.
*Counsel for Appellant*

/s/ Nicholas Whitelaw
*Counsel for Appellant*